JUDGE PRYOR
delivered the opinion oe the court.
Gray & Todd were the drawers of a bill of exchange upon R. P. Pepper for one thousand dollars, due in sixty days from the 11th of October, 1867; made payable to Edward H. Taylor; accepted by Pepper; indorsed by Taylor to J. B. Temple, by Temple to H. I. Todd, and by Todd to James A. Edwards & Co., who are succeeded by the appellants, E. Neal & Co. The paper was made and indorsed for the benefit of Pepper, the acceptor, and by him sold with the various indorsements upon it to the appellants. The bill shortly before its maturity was sent by James A. Edwards & Co., who were bankers at Shelbyville, Ky., and the owners of the paper, to the Branch Bank of Kentucky, at Frankfort, for collection. It matured on the 13th of January, 1868, and was on that day duly protested for non-payment by R. B. Taylor, a notary public, and then clerk in the Branch Bank of Kentucky. The notary inclosed the notices of protest, on the same day the paper was dishonored, by mail from Frankfort, Ky, to Edwards & Co., at Shelbyville. The notices were received at Shelbyville on the next day, the 14th of January, 1868, at eleven o’clock A. M., and forwarded by the evening’s mail of that day back to Frankfort ■ to H. I. Todd and the other indorsers, all of them living in the latter city. Todd failed to receive the notice of protest from Shelbyville until the 15th of January, although it was shown the mail reached Frankfort from Shelbyville late in the evening of the 14th. Edwards & Co. instituted their action against the drawers and indorsers of the bill, all of whom relied upon their discharge in bankruptcy except H. I. Todd, and his defense was a want of notice as required by law of the protest for non-payment.
A judgment was rendered in the court below against Todd, and on an appeal to this court was reversed for the reason that Todd, being a resident of the city of Frankfort at the time the bill was protested, was entitled to personal notice, *383 or the same-should have been left at his dwelling or place of business. That this is made the duty of the notary by an act of the legislature defining the duties of notaries, approved January 16, 1864 (Myers’s Supplement, page 354), and is also the law regardless of the statute. (Todd v. Edwards & Co., 7 Bush, 89.)
Edwards & Co., having failed in their action against Todd, instituted the present action against R. B. Taylor, the notary, alleging, among other things, that by reason of the gross neglect, carelessness, and failure upon his part to discharge his duties as notary imposed upon him by law — viz., in failing to give due and proper notice of the protest of the bill to Todd, the indorser, etc. — they have lost their debt, and sustained damages to the amount of two thousand dollars, etc.
Taylor filed his answer to the petition, traversing the allegations, and alleging due and proper diligence upon his part, and upon the trial a verdict and judgment were rendered for him, and from which Edwards & Co. prosecute-this appeal.
The record of the case of Todd v. Edwards & Co., containing the facts already recited, is made part of the present record, with the additional fact that the appellee Taylor knew at the time he protested the bill for non-payment that the indorser, H. I. Todd, was a resident of the city of Frankfort.
The third section of the act of January 16, 1864 {supra), provides “ that it shall hereafter be the duty of notaries public, upon protesting any of the instruments mentioned in the first section of this act, to give or send notice of the dishonor of such paper to such of the parties thereto as are required by law to be notified, to fix their liability on such paper ;■ and when the residence of any such parties is unknown to the notary public he shall send the notices to the holder of such paper; and he shall state in- his protest the names of the parties to whom he sent or gave such notices, and the time and manner of giving the same, and such statement in such protest *384 shall be prima facie evidence that such notices were given or sent as therein stated by such notary.”
It was evidently intended by this enactment to alter the law merchant in regard to giving notice of the protest of commercial paper; but the act itself is so indefinite in its mandatory clause that judicial construction was made necessary in order to enable notaries to know what their legal duties were by reason of its provisions. The act requires the notary, when he knows the place of residence of the parties to the bill, to give or send the notices to them, and not to the holder of the paper; but whether he is to deliver the notices in person or send them by mail or private hands on the day of the protest or the next day, or in a reasonable time, is nowhere stated, and the notary is left in entire ignorance as to the obligations it imposes. This court in the opinion rendered in the case of Todd v. Edwards & Co. was enabled, by the aid of the law merchant in connection with the act in question, to give it the only reasonable construction of which it was susceptible, and that was “where parties to negotiable paper were entitled to notice in order to hold them liable, and live in the same town or city where the protest is made, that there should be a notice in person delivered by the notary, or left at the dwelling or business house of the party sought to be charged. The law in such a case requires that this notice should be delivered either on the day of the dishonor of the paper or before the expiration of the business hours of the succeeding day.
The opinions rendered by this court prior to the case of Todd v. Edwards & Co. established no guidance except the doctrine of the law merchant requiring the notices to be forwarded to the holder by the first mail after the protest, or on the day succeeding it. The notices in this case were sent to Shelbyville on the same day the bill was protested — viz., on January 13, 1868 — and returned by mail from that place at the instance of the holders on the evening of January 14th, *385 the day following, but were not received by Todd until the morning of the 15th of the same month; and it might be well argued that under all these circumstances the notary had been guilty of no such laches as made him liable for the debt.
The principal business of notaries in this country is to protest commercial paper, and upon a faithful discharge of their duties in this regard the holders of such paper must depend, in order to secure the liability of the drawer and indorser; and if by reason of the negligence of the notary in the performance of this duty the holder of the paper loses his debt, the notary should be made liable therefor. In order, however, to fix this liability the loss must be shown to have been on account of the want of skill and diligence on the part of this officer. (Shearman and Redfield on Negligence, p. 483.) He is required to possess reasonable skill and to use ordinary diligence in his business; and by ordinary diligence and reasonable skill is meant “ that degree of diligence which persons of common prudence are accustomed to use about their own business affairs, and such skill as is ordinarily possessed and employed by persons of common capacity engaged in the same trade, business, or employment.” (Story on Agency, p. 231.)
It is true, as a legal proposition, that a notary when he assumes the duties of his office is required to know the law in relation to his business; but in the application of this principle the character of skill and diligence required of him must be considered, and we think the maxim ignorantia legis non excusat is no more applicable to the facts of this case than in other employments where only ordinary care and skill are required.
The ruling of this court prior to the construction of the statute of January, 1864, in the case of Todd v. Edwards & Co., upon similar questions, rather indicated that the notice to Todd was sufficient to charge him, or at least the law arising upon the facts in that case was involved in doubt, and learned *386 counsel on each side of the case cited many authorities in support of the position assumed. An attorney could not have been held responsible for advising Edwards that Todd’s liability existed; and if not, why should a judgment be rendered against the notary? The one is held to the same sort of diligence and skill in his employment that the other is. In a case against an attorney for negligence or mistake of law Lord Mansfield said, “Not only counsel but judges may differ, or doubt, or take time to consider; therefore an attorney ought not to be liable in cases of reasonable doubt.” (Pitt v. Yalden, 4 Burr, 2060.) It was shown in this case that the custom and practice of this bank, whose agent this notary was, had been for more than twenty years, and until the case of Todd v. Edwards & Co. was decided, to give notice through its notary, as was done in that case; and although this custom was not of itself a law, and could not prevail against a positive statute, still with the confusion and uncertainty created by the enactment of January, 1864, in regard to notaries, we could not well hold them to any particular line of duty until some settled and fixed construction had been placed upon it by the courts; and this was not done until after this alleged liability was created. It is insisted by appellant that an agreement was made between Todd and the Branch Bank of Kentucky, by which the former dispensed with personal notice by agreeing that a notice placed in the post-office at Frankfort should be deemed sufficient, and that the notary should have complied with its terms.. This agreement is exhibited, and bears date previous to the time at which the paper in controversy was protested; and waiving the question as to whether or not this agreement applies only to paper belonging to the bank (which we do not decide), yet the appellee Taylor was the acting notary and agent for the bank, and under its direction had sent all notices of protested paper in a similar manner, and can not be made liable by reason of this private arrangement with Todd, when the bank *387 had directed him, as shown by its universal habit, to send notices to the holders of the bills instead of the parties to be made liable.
Whether or not the instruction given to the jury by the court below contained the law of the case is immaterial, as in our opinion there has been no such negligence shown upon the part of the appellee as to enable the appellants to maintain this action. (Mechanics’ Bank of Baltimore v. Merchants’ Bank of Boston, 6 Met., Mass., 26; Bank of Washington v. Triplett, 1 Peters, 36.)
The judgment of the court below is affirmed.