CASE 55—ACTION ON BILL OF EXCHANGE—JANUARY 26, 1899.

# M. V. Monarch Co., The, Etc. v. Farmers and Traders Bank.

### APPEAL FROM DAVIESS CIRCUIT COURT.

1. CORPORATIONS—POWER TO GUARANTEE COMMERCIAL PAPER.—An ordinary manufacturing or mercantile corporation has no authority to guarantee commercial paper, unless express power to do so be conferred by its charter, or unless such contract is reasonably necessary or is usual in the conduct of its business.

2. NOTICE OF DISHONOR—WHEN TO BE GIVEN.—Notice of the dishonor of commercial paper is given in time if it is mailed on the day of the dishonor and received by the party to be charged on the following day.

3. INDORSER NOT RELEASED BY RELEASE OF ANTECEDENT INDORSER.—An indorser of commercial paper guarantees the legal liability of antecedent indorsers and is not, therefore, released because a corporation which had also indorsed the paper escaped liability on the plea of *ultra vires*.

WALKER & SLACK FOR THE APPELLANTS. (FAIRLEIGH & STRAUS, LITTLE & LITTLE, OF COUNSEL.)

1. A corporation has not, as a general rule, the right to enter into a contract of suretyship; and this rule is without exception where the corporation has no interest in the contract. 24 Am. & Eng. Enc. of Law, 727-729.

2. Personal service of notice of protest is essential to fasten liability upon the drawer or indorser of a bill of exchange, whose residence and place of business are just outside of the corporate limits of the city where the note is protested. and the failure to give such notice works a release of the drawer or indorser as the case may be. Brown v. Bank of Abingdon (Va.), 7 S. E. R., 357, and authorities cited; 2 Daniel on Negotiable Instruments (4th ed.), sec. 1014, and notes. This is well established. Where the person whose duty it is to give the notice, and the one to be charged by the notice, reside within the same postoffice deliv-

M. V. Monarch Co., The, &c., v. Farmers and Traders Bank.

ery, the notice must be served personally, or left at the residence or place of business of the person to be charged, and the post-office can only be resorted to in cases where the person to be notified resides nigher to, or is in the habit of receiving his mail at, another postoffice, to which the notice may be sent by mail. The postoffice is not a place of deposit for notices to in-dorsers, except where the notice is to be transmitted by mail to another office.

3. Where, as in the present case, the drawer and indorser have each a regular place of business in the city where the bill is paya-ble, notice of protest must be served personally, and notice through the mail is not legal or valid. 2 Daniel on Neg. Instr., secs. 1015, 1038; Todd v. Edwards, &c., 7 Bush, 89.

4. A waiver of notice of protest after the drawer or indorser has been discharged by laches, requires a new consideration. 3 Randolph on Commercial Paper, sec. 1356, p. 415; Sebree Deposit Bank v. Moreland, &c., 96 Ky., 158.

5. Where a bill is upon the footing of a foreign bill of exchange protest for non-payment, and notice thereof to the drawer and indorser, are necessary to hold them bound, and such notice, under the statute, must be given immediately upon, or on the very day of the protest. Ky. Stats., sec. 3725; Todd v. Edwards, &c., 7 Bush, 89; Mulholland & Bros. v. Samuels, 8 Bush, 63; 3 Randolph on Com. Paper, sec. 1254. The intention in the enact-ment of this statute was to re-establish the old and first rule, which was that notice must be given on the very day of the ma-turity of the bill, and immediately upon protesting (3 Randolph on Com. Paper, sec. 1254), and to alter the law-merchant in ex-pediting the giving of the notice and substituting the notary for the holder, requiring notice to be given on the very day the bills became due to each drawer and indorser, and to provide record evidence thereof.

6. The failure of the notary public to give the required notice of protest, in the mode and within the time prescribed by the statute to drawer or indorser releases a subsequent endorser. 2 Daniel on Neg. Instr., Sec. 1303, p. 327; 24 Am. & Eng. Enc. of Law, 845, 856; 2 Am. & Eng. Enc. of Law, 408 and note 6; 3 Randolph on Com. Paper, sec. 1846, p. 960; Bank of Kentucky v. Floyd, &c., 4 Met., 160; Davis v. Gardi-ner, &c., 1 Bush, 273. At common law it was not the duty of the

notary to give notice of protest (2 Daniel on Neg. Instr., sec. 991), and the protest was not, therefore, "evidence in respect to notice." (Id., sec. 1055.)

The statute is a positive innovation of the common law rule in regard to notice, and exacts that it must be given by the notary (not the holder), and delay is fatal. (Sebree Deposit Bank v. Moreland, 96 Ky., 150.) In giving such notice, the notary acts as an officer, and is liable on his official bond for negligence. (3 Randolph on Com. Paper, sec. 1237, pp. 263, 264; 2 Daniel on Neg. Instr., sec. 991, p. 50, and note 5; Todd v. Edwards & Co., 7 Bush, 89; Neal & Co. v. Taylor, 9 Bush, 380; Mulholland & Bros. v. Samuels, 8 Bush, 63; and he acts, also as agent of the holder, and must give the notice, on the day of the dishonor, to drawer and indorser and the failure to do so will release the party, drawer, or indorser, not notified, and, clearly, all subsequent parties.

Under the statute, it is no longer the duty or right of the holder or subsequent indorser, to give the notices; but, to be valid, it must be given by the notary directly, which is, designedly, a radical change of the rule previous to the statute, which was that the holder must give the notice to all, or a part of, the indorsers, and, in the latter case, the indorser notified must then notify antecedent indorsers. (2 Daniel on Neg. Instr., sec. 995, p. 53; 2 Am. & Eng. Enc. of Law, pp. 386, 387.)

7. Knowledge of dishonor does not constitute notice. (2 Daniel on Neg. Instr., sec. 972, p. 33), and the statute having conferred exclusive authority upon the notary to give the notice, notice given by any one else is without authority, and the holder can not avail himself of it. 3 Randolph on Com. Paper, sec. 1236, p. 262.)

8. Previous to the statute, where the notice given by the holder to an indorser was too late, and he was thereby discharged, a subsequent indorser could not avail himself of it, although, if given by him, it would have been in sufficient time, and, a notice given by an indorser, who had been discharged, could not fix liability on a prior indorser. (3 Randolph on Com. Paper, sec. 1235, p. 261).

There is no rule of commercial law more rigidly observed than that requiring notice of protest to drawer and indorser at the time and in the mode pointed out. (Sebree Deposit Bank v.

Moreland, &c., 96 Ky., 158; 2 Daniel on Neg. Instr., sec. 971, p. 32.)

9. Where indorsers on a bill of exchange have, the one a place of business, and the other a place of business and residence in the town or city where it is payable, the notice has to be personal, or, as to the former, left at his place of business during the hours of business, and, as to the latter, given at his residence before the hours of rest, or at his place of business during the hours of business. Todd v. Edwards, &c., 7 Bush, 89; 2 Daniel on Neg. Instr., sec. 1038, p. 91.

10. Whether a bill of exchange is a foreign bill, or placed upon the footing of a foreign bill, or domestic, notice is required in order to hold bound the drawer or any indorser, the difference being only that, in case it is a domestic bill, the statute does not apply, and the law merchant controls, in which case the holder, and not the notary must give the notice of dishonor, except as it is alleged that the notary acted as the agent of the holder by appointment, and the authorities to the effect that the notice must be personal, or left at the dwelling-house during the hours before rest, or place of business during the hours of business, apply in case the bill be an inland bill, and this rule obtains where the indorser resides outside of the corporate limits of the city, where the bill is payable, or in the immediate suburbs, and within the same postoffice delivery with the notary. Citizen's Savings Bank v. Hays (29 S. W,. 20, 96 Ky., 365); 2 Daniel on Neg. Instr., secs. 987, 988; 3 Randolph on Com. Paper, secs. 1233, 1234, 1236; 2 Am. & Eng. Enc. of Law, 411 and note 5.

It follows from these decisions, that except as it is provided by statute, or there is special authority by the holder, notice of dishonor of an inland bill given by a notary is invalid. They expressly decide it.

11. In suits against drawers or indorsers, notice must be averred and proved, and can not be presumed to have been given. 2 Am. & Eng. Enc. of Law, 407, note 3; 409 and note 11; 3 Randolph on Commercial Paper, sec. 1204; 2 Daniel on Neg. Instr., sec. 972; 2 Randolph on Com. Paper, secs. 760, 1219.

12. In an action on an inland bill, the petition must aver that the notice of dishonor was given by the holder or his specially authorized agent, and the time when it was given. 3 Randolph on Com. Paper, sec. 1250, p. 281; 2 Am. & Eng. Enc. of Law, 413.

[ 28 ]

Bear in mind the protest is not evidence, and can not cure the defects in the petition. Citizens Savings Bank v. Hays, 96 Ky., 365; 3 Randolph on Com. Paper, sec. 1310.

13. A protest must state (1) the time of presentment; (2) place of presentment; (3) fact and manner of presentment; (4) demand of payment; (5) fact of dishonor; (6) names of the parties by whom and to whom presentment was made. (19 Am. & Eng. Enc. of Law, 293.) And an allegation in the petition or statement in the protest that demand was made "of the proper officer," is a mere conclusion and insufficient.

Where a protest, as in the case of an inland bill, is not necessary, or any evidence of demand or notice of dishonor, it is certain the petition must contain distinct averments in respect to these facts.

14. The averment does not show a sufficient notice, in that neither it nor the notice shows due presentment and demand or that the holder looks to the indorser for payment. 3 Randolph on Com. Paper, secs. 1220, 1222, 1226, 1227; 2 Am. & Eng. Enc. of Law, 409.

15. In pleading a private statute, "its title and the day on which it became a law," must be stated. Civil Code, sec. 119, sub-sec. 2; Cable v. Louisville Baptist Orphans' Home, 92 Ky., 89.

16. Upon sustaining a demurrer, leave to amend is proper, and greater liberality is exercised in allowing a defendant to amend his answer than a plaintiff his petition, and refusal to grant such leave is subject to review upon appeal. Civil Code, sec. 94; 1 Enc. of Pl. & Pr., 594, 595, 518 and note, 629.

SWEENEY, ELLIS & SWEENEY FOR APPELLEES.

1. The notice served on the M. V. Monarch Co. and M. V. Monarch individually, through the mails (independently of the question of their having waived notice of protest) was sufficient and they are bound thereby.

2. Mrs. Perkins was not released by failure of the corporation to bind itself.

3 The Monarch Company waived notice of protest, but whether so or not, Mrs. Perkins guaranteed the legal liability of the antecedent indorsers and can not take advantage of their release, if they were released.

4. The act of the M. V. Monarch Co. in indorsing the paper was not *ultra vires.*

M. V. Monarch Co., The, &c., v. Farmers and Traders Bank.

Citations:· Randolph on Commercial Paper, vol. 3, sec. 267; Watson v. Gempleton, 11 La. An., ——; Myers v. Standard, 11 Ohio St., 29; Crane v. Trudes, 19 La. An., 307; Henry v. State Bank, 3 Ind., 216; Struthers v. Blake, 30 Penn. St., 139; Carter v. Bradley, 19 Me., 62; Cardwell v. Allen, 33 Gratt., 160; Valk v. Bank of South Carolina, 1 McMull, Eq., 414; Wilcox v. Mitchell, 4 How., 272; Harvey v. Nelson, 33 Am. Rep., 222; Smith v. Lockridge, 8 Bush, 423; Shrieve v. Duckham, 1 Litt., 195; Bank of Kentucky v. Eades, 1 Litt., 277; Pearson & Co. v. Duckham, 3 Litt., 385; Bank of Frankfort v. Markley, 3 Mar., 505; Byles on Bills, sec. 281; Bank of Tennessee v. Smith, 9 B. M., 610; Landrum v. Trowbridge, 2 Met., 281; Mulholland Bros. v. Samuels, 8 Bush, 65; Beach on Modern Law of Contract, vol. 2, secs. 986, 994; Schofield v. Parlin & Orendorff Co., 61 Fed. Rep., 804; s. c. 10 C. C. A., ——; Morawetz on Private Corporations, sec. 692; Bradley v. Ballard, 55 Ill., 413; Beach on Modern Law of Corporations, sec. 1268, and note 1, sec. 997.

FAIRLEIGH & STRAUS, LITTLE & LITTLE, AND WALKER & SLACK, FOR THE APPELLANT, MILDRED PERKINS, IN A PETITION FOR A RE-HEARING.

Citations:  Civil Code, secs. 94, 119, sub-sec. 2; Zable v. Louisville Orphans' Home, 92 Ky., 89; Citizens' Savings Bank v. Hays, 96 Ky., 365; 29 S. W., 20; Hays v. Citizens' Savings Bank, 40 S. W., 573; 2 Daniel on Neg. Instr., secs. 987-8, 972; 3 Randolph on Com. Paper, secs. 1204, 1233, 1250, 1234, 1236; 2 Am. & Eng. Enc. of Law, 411, note 5; same, 407, note 3, and 409, note 11; 413; 2 Randolph on Com. Paper, secs. 760, 1219; Ky. Stats., secs. 2725, 3723; 23 Am. & Eng. Enc. of Law, 288; 1 Enc. of Pl. & Pr., 594-595, 518.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This action is upon a bill of exchange accepted by Slack & Perkins, drawn by the M. V. Monarch Company, and indorsed by M. V. Monarch and Mildred Perkins. Appellants, Slack & Perkins, the M. V. Monarch Company, and M. V. Monarch, filed a joint answer, in which joint and separate defenses are made. They jointly allege and plead

that the obligation sued on contains usury, and ask that it be eliminated. The M. V. Monarch Company and M. V. Monarch allege that the Monarch Company is a private corporation, having the power to manufacture and sell whisky and such other powers as are incident thereto; that it has no power to become the accommodation drawer or indorser upon the paper of any other person or corporation; that its name was signed as drawer to the bill of exchange sued on, as a mere accommodation for Slack & Perkins, who discounted the bill with plaintiff, and received the entire proceeds arising therefrom; that the signing of the name of the M. V. Monarch Company as drawer of the bill, and the indorsement of same by M. V. Monarch, were without consideration, and that this fact was known to the plaintiff at the time it discounted the original bill and at the time it accepted each bill in renewal thereof; that at the date of the maturity of the bill sued on the M. V. Monarch Company had its business office in the city of Owensboro, and that plaintiff and the notary public who protested the bill knew this fact; that M. V. Monarch had his office in Owensboro, but resided outside the city limits; that the notary, at 6 o'clock p. m., on December 27, 1895, the date of the maturity of the paper sued on, placed a notice of protest in the postoffice at Owensboro, addressed to the M. V. Monarch Company, and also a notice addressed to M. V. Monarch, Owensboro, Ky.; that by reason of these notices having been deposited in the postoffice they were not received until some time during the next day, December 28, 1895, and that the notices could have been delivered to each of these defendants on the day of the maturity of the bill, at their respective offices; and these facts are pleaded by way of avoidance of the obligation sued on. Mildred Perkins, the last indorser,

pleads in her answer that she was a mere accommodation indorser upon the bill; that the indorsement of the M. V. Monarch Company was *ultra vires*, and that it is not bound thereby; and by reason thereof she claims that, under the statute, she is released. A general demurrer was sustained to the answers of the M. V. Monarch Company, M. V. Monarch, and Mildred Perkins, as to all the defenses relied on except that of usury; and, the defendants failing to plead further, a judgment was rendered against all the defendants for the debt sued on, after eliminating the usury it contained; and we are asked upon this appeal to reverse that judgment, on the ground that the court erred in sustaining the demurrer as to each defense relied on by defendants.

We will consider these defenses *seriatim.* First, is the M. V. Monarch Company liable as an indorser under the allegations of the answer, which, upon demurrer, must be taken as true? As a general rule, a corporation has no power to enter into a contract of suretyship or guaranty, or otherwise lend its credit to another, unless such contract is reasonably necessary, or is usual in the conduct of its business. Ordinarily, the simple act of becoming surety or guarantor for the contract or debt of another person or corporation is not within the implied powers of a corporation. The reason for this rule is that such a contract risks the capital and funds of the corporation in an enterprise not contemplated by the stockholders in subscribing for or purchasing its stock, prejudices the rights of its creditors, and exceeds the authority conferred by its charter. See 7 Am. & Eng. Enc. Law (2d. Ed.), 778. The reason for this rule was well expressed in Todd v. Kentucky Union Land Co., 57 Fed.. 51, where it is said: "First. The corporate funds belong to its shareholders, and, by the

very terms of the law creating it, can not be devoted to any other purposes than those indicated by its charter. Such obligations would violate the fundamental terms of the agreement between the corporators themselves. Second. To do so would be to exercise a power not conferred by the State, either expressly or impliedly. The State's grant of the corporate franchise is for the purposes prescribed, and the execution of such obligations would be beyond the power conferred, and therefore a diversion of the corporate purposes as well as of the corporate funds."

Thompson, in his Commentaries on the Law of Corporations (section 5721), says: "With the exception of those corporations—such as trust and guaranty companies—which are organized for the express purpose of becoming sureties for other persons or corporations, and with other exceptions elsewhere stated, it may be laid down, as a *general rule*, that no corporation has the power, by any form of contract or indorsement, to become a guarantor or surety for, or otherwise lend its credit to another person or corporation." And in section 5723, in assigning the reasons and limitations, he says: "This principle is designed for the preservation of the funds of the corporation, for the benefit of those having an interest in them, by preventing them from being embarked in enterprises not authorized by the charter or governing statute. Those persons are primarily the *stockholders* as long as the corporation continues a going concern, and it is their right that the corporate funds shall not be put to hazards or embarked in an undertaking not authorized by the contract of association. If the doctrine that the capital of the corporation is a *trust fund,* for the security of its *creditors*, is any more than an empty and idle collection of words, then the principle is also designed for the security of the creditors of the corporation,

by preserving from an unauthorized dissipation a fund which, in the event of insolvency, equity impresses with a trust in their favor."

There are, however, some exceptions to this general rule, and in a number of cases, where such contracts have been shown to be of manifest advantage to a corporation, they have been enforced.   See 4 Am. & Eng. Enc. Law, 727-729; Fuld v. Brewing Co. (Com. Pl.), 18 N. Y., Supp. 456; and Holmes v. Willard [11 L. R. A., 170, 125 N. Y., 75; 25 N. E., 1083.]   But there is nothing in the allegations of the petition which brings the M. V. Monarch Company within the announced exceptions to the general rule, and the court erred in sustaining the demurrer to the plea of *ultra vires* relied on by the corporation.

The next question presented is, was M. V. Monarch entitled to a personal service of notice of protest, and if so, did the failure of personal service release him, and was the notice givin' in due time? In Neal, etc., v. Taylor, 9 Bush, 384, in construing the third section of the act of January 16, 1864, prescribing the duties of notaries public in protesting negotiable paper in order to fix the liability of the parties thereto, this court said:   "It was evidently intended by this enactment to alter the law merchant in regard to giving notice of the protest of commercial paper, but the act itself is so indefinite in its mandatory clause that judicial construction was made necessary in order to enable notaries to know what their legal duties were by reason of its provisions.  The act required the notary, when he knows the place of residence of the parties to the bill, to give or send the notices to them, and not to the holder of the paper; but whether he is to deliver the notices in person or send them by mail or private hands on the day of the protest, or the next day, or in a reasonable time,

is nowhere stated. The notary is left in entire ignorance as to the obligation it imposes. This court, in the opinion rendered in Todd v. Edwards 7 Bush, 93, was enabled, by the aid of the law merchant in connection with the act in question, to give it the only reasonable construction to which it was susceptible, and that was: 'Where parties to negotiable paper were entitled to notice in order to hold them liable, and lived in the same town or city where protest was made, there should be a notice in person delivered by the notary, or left at the dwelling or business house of the party sought to be charged. The law, in such a case, requires that this notice should be delivered either on the day of dishonor of the paper or before the expiration of the business hours of the succeeding day.' "

And in Bondurant v. Everett, 1 Metc., 658, this court held "that where the party sought to be charged as drawer or indorser of a bill live near to, but not in or at, the place of dishonor, and the postoffice at that point is the office where he usually receives his letters or the nearest office to his residence, notice must be given to him by letter, through such office."

There are numerous adjudications holding that the rule as to personal notice is to be restricted to cases where the party to be affected by the notice resides within the limits of the city or town in which the note is protested, and if he resides in the country, outside of those limits, but receives his mail at the postoffice at that town, a service by mail is sufficient. See Ransom v. Mack, 38 Am. Dec., 611. But it seems to be the settled rule that the holder of commercial paper is not required to give notice of dishonor on the day the paper is protested, but may give notice on the first business day thereafter, and such notice is sufficient. See 5 Am. & Eng. Enc. Law (2d Ed.),

528, and 2 Daniel, Neg. Inst., 84. The answer of appellant shows that he received the notice of protest of this paper on the first business day after it was protested, and we do not think it is a matter of any importance whether he received it through the mail or by personal delivery directly from the hands of the notary. The fact that he got the notice in time is all that is required.

In discussing this question, 2 Daniel, Neg. Inst., p. 56, says: "If the party receives the notice, the mere manner of its transmission is wholly immaterial. A personal service of notice is good wherever it may be made, provided it be done in proper time. At an improper place, it is sufficient if it reaches the party for whom it was intended in due season. And so, likewise, if it be sent by mail, where the parties reside in the same place, it is good if it duly reaches the party addressed. The distinction between the different modes of giving notice is this: Where the holder and indorser reside in different places, the former, if he deposits the notice in the postoffice in due season has no further burden on him as to the actual receipt of it by the latter; but, where both parties live in the same town, the sender of the notice is bound to show that it was actually received by the indorser in due season." We think the law was fully complied with, so far as the notice is concerned.

The last question to be considered is that raised by the answer of Mildred Perkins; that is, can she escape liability on the paper because the act of the corporation in becoming a drawer of the bill was *ultra vires?* We think not.

2 Rand. Com. Paper, Sec. 742, says: "The indorser, by placing his name on the back of a bill of exchange, note, or check, undertakes—First, that it shall be

accepted and paid according to its tenor, on due present-ment and notice of dishonor; second, that the instrument, and the signatures of all prior parties thereon, are genu-ine; third, that the instrument is valid according to its pur-port; fourth that the parties to it are competent to contract; fifth, that the indorser has the title and right to transfer. The indorsement of a bill, when delivered, implies a war-ranty or promise that it shall be paid on condition of due presentment and notice of dishonor. If the bill is payable in future, he undertakes that he will pay it with damages, if the drawee fails on presentment, and he is duly noti-fied of such failure."

Generally, an indorser of a negotiable instrument warrants to a bona fide holder the existence of every essential necessary to constitute the instru-ment a valid and subsisting obligation. It is a part of the contract of indorsement that the paper indorsed has been made by a person competent to contract in that form. See Archer v. Shea, 14 Hun, 493; Kenworthy v. Sawyer, 125 Mass., 28; Ross v. Dixie, 7 U. C. Q. B., 414. It seems clear, from the authorities on this question, that the liabil-ity of appellant Mildred Perkins is not affected by the failure of the M. V. Monarch Company to become liable upon its indorsement.

For the reasons indicated herein the judgment is re-versed upon the appeal of the M. V. Monarch Company, and affirmed as to the other appellants, and the cause is re-manded for proceedings consistent with this opinion.