## In re GILCHRIST CO.

### Claim of WILLIAM FILENE'S SONS CO.

(District Court, D. Massachusetts. February 6, 1922.)

No. 19253.

1. **Corporations ☞484 (3)—Dry goods company's guaranty of lease of another dry goods company held ultra vires.**

   Where dry goods company was organized in Massachusetts for the purpose "of buying, selling, jobbing, manufacturing, and dealing in dry goods and general merchandise, and carrying on the business of a department store," its guaranty of the lease of another dry goods company in that state *held* ultra vires, under Pub. St. Mass. c. 106, § 50, now G. L. Mass. c. 158, § 10, notwithstanding the claim that such guaranty was advantageous, as securing the location of the business of the guaranteed company near the store of the guaranteeing company, as tending to build up a shopping center.

2. **Corporations ☞484 (3)—Power of one corporation to guaranty another's lease not affected by fact majority of stock in both held by one person.**

   As regards the power of one corporation to guaranty the lease of another corporation, the fact that the majority of the stock in both corporations was held by the same person was immaterial.

3. **Corporations ☞372—Charters to be fairly, not liberally, construed.**

   Corporation charters and agreements of association, since ordinarily they are drawn by interested parties, are to be construed fairly and justly, rather than liberally, as to the extent of powers conferred.

4. **Bankruptcy ☞316 (3)—Obligation of guarantor on defaulted lease an absolute one.**

   Where lessee was in default when claim of the lessor on its guaranty was filed in proceedings against the bankrupt guarantor, the liability of the bankrupt had become absolute.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Corporations ⊜⟫416—Continued acquiescence of directors in corpora-
tion's guaranty, defectively executed, held to ratify it.**

Though corporation's guaranty was defectively executed, yet if the
directors, with knowledge of the circumstances attending its execution,
continued to acquiesce in it and failed to object to it, it would be regard-
ed, if intra vires, as the act of the company.

In Bankruptcy. In the matter of the Gilchrist Company, bankrupt.
Claim of the William Filene's Sons Company was allowed by the ref-
eree, and bankrupt petitions for review. Referee's order vacated,
and claim disallowed.

Sherman L. Whipple, of Boston, Mass., for bankrupt.

Dunbar, Nutter & McClennen, of Boston, Mass., for creditor.

MORTON, District Judge. [1] This case grows out of a written
guaranty by the Gilchrist Company, the bankrupt, to the William Fi-
lene's Sons Company, hereinafter called the Filene Company, of a
lease executed by the latter to the William S. Butler Company of prem-
ises at the southwest corner of Washington and Winter streets, in the
city of Boston. All three were Massachusetts corporations engaged
in carrying on dry goods department stores. The Butler Company
was located on Tremont street, the Gilchrist Company on the north-
west corner of Washington and Winter streets, and the Filene Com-
pany on the southwest corner of Washington and Winter streets, di-
rectly opposite the Gilchrist Company.

The circumstances under which the guaranty was entered into are
briefly as follows: William E. Butler was the treasurer and owner
of a majority of the stock of the Butler Company. He was also the
treasurer of the Gilchrist Company, and during negotiations over the
lease became its controlling stockholder. The Filene Company was
about to move out of the store occupied by it on the leased premises
into a new building that had been erected for it on the northwest cor-
ner of Washington and Summer streets, diagonally opposite the old
store, and was looking for a tenant for that store. Butler conceived
the idea of taking lease of the old Filene store, and moving the But-
ler Company into it, and selling a better class of goods, and of organ-
izing a new corporation, to be called "Everybody's Store," to go into
the Butler store on Tremont street and continue that business, and of
combining, to a certain extent, the management of the three stores,
while keeping them separate and distinct.

The locality at the corner of Washington, Winter, and Summer
streets appears, on the evidence presented, to have been the greatest
center of the retail dry goods trade in Boston. The evidence for the
claimant is to the effect that Butler thought, and was justified in think-
ing, that in addition to the advantage which the Gilchrist Company
would receive, in common with other retail dry goods stores in the
vicinity, from having Butler & Co. move into the old Filene store,
there would be special advantages to it in having a friendly, instead
of a possibly hostile, competitor, and in the co-operation between the
two companies in regard to administrative offices, and to matters of

---

⊜⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

lighting, heating, advertising, buying goods, and in conducting their business in other ways to greater mutual advantage. I shall refer to this matter later, but I may say at this point that as to some of these things—e. g., advertising and the buying of goods together—it would seem that they could have been done to equal advantage if the Butler Company had remained in Tremont street.

Pursuant to the plan thus outlined, Butler entered into an agreement with the Filene Company for a lease of the store in question. The Filene Company required a guaranty. Butler offered that of the Butler Company (his scheme having contemplated at one time a lease to another company to be formed, which fell through), but it was not satisfactory to the Filene Company. Butler at that time did not control the Gilchrist Company, and his fellow stockholders in it refused to agree to its guaranty of the lease. Butler, in order to remove this obstacle, acquired a majority of the stock in the Gilchrist Company, and then offered its guaranty on the lease, which was accepted. A lease was taken to the Butler Company, and the guaranty was thereupon executed by the Gilchrist Company, though not, it is contended, so as to bind it. The lease and guaranty were both dated May 29, 1912. The Filene Company finished moving out September 2, and the Butler Company took possession under the lease the next day, September 3, 1912. On November 7, 1912, receivers were appointed by this court for the Butler Company, and also for the Gilchrist Company. The receivers of the Butler Company took possession on the day on which they were appointed, and on December 5th elected not to affirm the lease, and so notified the Filene Company. On December 9th the Filene Company entered by leave of court for breach of the conditions of the lease, and repossessed itself of its former estate. It is agreed that the Filene Company made all reasonable and proper efforts to obtain tenants, but was only able to do so at a loss. In March, 1913, an involuntary petition in bankruptcy was filed against the Gilchrist Company. An offer of composition of 50 per cent. was made by it, which was subsequently confirmed. On September 13, 1913, the Filene Company filed a petition for damages under the lease against the Butler Company which was finally allowed by the Supreme Court (Filene's Sons Co. v. Weed, 245 U. S. 597, 38 Sup. Ct. 211, 62 L. Ed. 497) for $205,805.37, and a dividend of 15 per cent. paid thereon. The claim in this case was filed September 27, 1913. After numerous hearings before the referee, it was finally allowed by him for $205, 805.37. No objection is made to the amount. Thereupon the Gilchrist Company filed this petition for a review; and the case is here on the certificate of the referee, with the testimony and exhibits introduced before him.

The principal question is whether the guaranty was ultra vires the Gilchrist Company. It is also contended, as already noted, that the guaranty was not executed so as to bind the Gilchrist Company; that the claim is a contingent one, and therefore not provable; and that the execution of the guaranty by Butler as treasurer of the Gilchrist Company was a misuse of that company's credit for Butler's private benefit, with knowledge of or notice to the Filene Company, and therefore voidable by the Gilchrist Company.

A corporation can only do what by its charter, or agreement of association, or by the laws under which it is organized, it is authorized to do. But:

"Whatever transactions are fairly incidental or auxiliary to the main business of the corporation and necessary or expedient in the protection, care and management of its property may be undertaken by the corporation and be within the scope of its corporate powers." Teele v. Rockport Granite Co., 224 Mass. 20, 25, 112 N. E. 497, 498.

The claimant contends that the execution of the guaranty by the Gilchrist Company was reasonably incidental and auxiliary to its business, and therefore within the scope of its powers. No uniform rule has been or can be laid down as to what is or is not incidental or auxiliary. Each case must depend, first, on the nature of the powers granted; and, second, on the facts in the particular case.

The Gilchrist Company was organized under the Public Statutes of Massachusetts for the purpose, as stated in the agreement of association, "of buying, selling, jobbing, manufacturing, and dealing in dry goods and general merchandise and carrying on the business of a department store." Pub. St. c. 106, § 50, provided that—

A "corporation * * * shall not direct its operations or appropriate its funds to any other purpose than that specified in its agreement of association or its charter, as the case may be."

See now General Laws, vol. 2, c. 158, § 10.

This does not forbid the use of its funds or property by a corporation for purposes reasonably incident to those for which it was created; but it does forbid their use for purposes which are not fairly included in the charter or agreement of association.

The Gilchrist Company being a Massachusetts corporation, and the guaranty being a Massachusetts contract to be performed in Massachusetts, the agreement of association and the guaranty must both be construed according to the law of that state. The leading case in that state, and one that is regarded as a leading case by the Supreme Court of the United States, and in other jurisdictions, is the case of Davis v. Old Colony Railroad, 131 Mass. 258, 41 Am. Rep. 221. See also Teele v. Rockport Granite Co., supra. It is attempted to distinguish this case from that, but, it seems to me, without success. The Gilchrist Company, as has been said, is a corporation organized to engage in the business of buying, selling, jobbing, manufacturing, and dealing in dry goods and carrying on a department store. What it did in this case was to guarantee to the Filene Company the performance by another corporation, with which it was not in any way connected, of the conditions of a lease to the other corporation by the Filene Company of premises used and occupied by the other corporation—something entirely different from the business that the guarantor was authorized to do, and involving it in a liability of hundreds of thousands of dollars. There can be no comparison between the nature of the liability thus assumed and that incurred in indorsing or guaranteeing, for the purpose of realizing on it, the note of a customer taken in the course of trade, or that which may be assumed in the ordinary course of business to assist a prospective customer in order to secure his

trade. There is nothing, I think, in this case that warrants the application of the rule quoted by the claimant from Railway Co. v. McCarthy, 96 U. S. 258, 267 (24 L. Ed. 693), namely:

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

For an illustration of the circumstances to which that rule is applicable, see Whitney-Arms Co. v. Barlow et al., 63 N. Y. 62, 20 Am. Rep. 504. It should be noted, as bearing upon the equities, that the question of ultra vires was raised at or before the execution of the guaranty, and that the Filene Company was cognizant of it and was apprised of all material facts on which it depends.

The claimant seeks to justify the guaranty on the ground of the closeness of the relations between the Butler Company and the Gilchrist Company, and on the ground that the lease to the Butler Company would be of such advantage to the Gilchrist Company—not directly by reason of its occupancy of a portion of the premises, but as hereinbefore pointed out—that the guaranty should be regarded as fairly incidental and auxiliary to the main business of the corporation, and necessary and expedient to the protection, care, and management of its property. In other words, the argument is that, the purpose being laudable and the contemplated results beneficial, and the two corporations being closely allied, the guaranty should be regarded as within the corporate powers of the Gilchrist Company. But a transaction does not necessarily come within the powers of a corporation because advantageous to it. It was said by Lord Chancellor Cranworth in Eastern Counties Railway v. Hawkes, 5 H. L. Cas. 345, 348, and quoted with approval in Davis v. Old Colony Railroad, supra, 131 Mass. 264, 41 Am. Rep. 221:

"That a company incorporated by act of Parliament for a special purpose cannot devote any part of its funds to objects unauthorized by the terms of its incorporation, however desirable such an application may appear to be."

The question, however, whether the purpose to which it is proposed to apply the funds or property of a corporation is beneficial to the corporation, is, from another point of view, an important one. The claimant has, in effect, conceded, as I understand the evidence, that if the guaranty were an accommodation guaranty, it could not recover on it. See Monarch Co. v. Farmers' Bank, 105 Ky. 430, 49 S. W. 317, 88 Am. St. Rep. 310; Humboldt Mining Co. v. American Mfg. Co., 62 Fed. 356, 10 C. C. A. 415. Even if the guaranty were within the scope of the powers of the Gilchrist Company, it might still be necessary to show that it was—or at least might reasonably be considered—advantageous to the Gilchrist Company, and that the directors were therefore justified in entering into it.

One department store may, no doubt, engage in transactions with another department store, which are not specifically described in the charter or agreement of association. Such ventures and undertakings as legitimately arise out of the business described in the charter or agreement of association are included within the scope of what may

be done. But the guaranteeing to the lessor of the performance by another corporation of the conditions of a lease to it of premises with which the guarantor has nothing to do, and involving a possible liability dangerously large as compared with the assets of the guarantor, cannot be said, it seems to me, to arise legitimately out of powers granted to carry on a dry goods business. The making of such a guaranty is not fair, either to the minority stockholders of the guarantor or to its creditors. It is not within the scope of the business which the former have invested in, nor within the legitimate risks of the business to which the latter have extended credit.

[2] In this connection it should be observed that using the words "ultra vires" in the sense in which they are used here, namely as meaning that the Gilchrist Company cannot do anything beyond what it is authorized by the agreement of association to do, the fact that major part of the stock of both the Gilchrist Company and of the Butler Company was in the same hands is of no consequence. If ultra vires, the guaranty would be void without regard to the ownership of the stock. It hardly seems necessary to observe that one corporation cannot enter into partnership with another, nor can a corporation do all the things that a natural person or an ordinary partnership similarly situated might do.

I cannot resist the conclusion that to a considerable extent the alleged interest of the Gilchrist Company in having the Butler Company on the opposite corner is fictitious and unsubstantial, and was suggested in an attempt to justify the guaranty. The able and experienced managers of the Gilchrist Company evidently saw no advantage to it in having the Butler Company on the opposite corner at all commensurate with the heavy liability which it assumed by guaranteeing the lease. The Filene Company's new store was diagonally across the street from the leased premises; but that fact did not deter the Filene Company from letting go of its old location. The Gilchrist Company, as before stated, was not at first contemplated as a guarantor; it was only brought in after Butler's first plan had fallen through. He acquired control of the Gilchrist Company for the purpose of having it guarantee the lease, in order to further his rather elaborate schemes of business extension. When the proposal for a guaranty by the Gilchrist Company was broached, doubt of its legality was suggested. Evidently the Filene Company was as anxious as Butler to have the lease and guaranty go through, and both parties endeavored to persuade themselves that it could properly be done. The interest of the Gilchrist Company—as distinct from the interest of Butler who controlled a majority of its stock—seems to have been little regarded and was certainly sacrificed. The case in this respect resembles In re National Piano Co., Kilmer, Claimant (C. C. A.) 261 Fed. 733, in which the court expressed strong disapproval of cases in which the responsibility of a corporation is used for the personal advantage of the person who controls it and of the parties with whom he deals.

The case before me is not like those, for instance, of Timm v. Grand Rapids Brewing Co., 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186, and Kraft v. Brewery Co., 219 Ill. 205, 76 N. E. 372, cited by

the claimant, where what was done could perhaps be fairly said to be strictly incidental to the business which the corporations were authorized to do, though even in such cases as those the current of authority does not seem to have been altogether uniform. See In re Liquor Dealers Supply Co., 177 Fed. 197, 101 C. C. A. 367, and Humboldt Mining Co. v. American Mfg. Co., 62 Fed. 356, 10 C. C. A. 415. Nor is it like the case of Zabriskie v. Cleveland, Columbus & Cincinnati R. R. Co., 23 How. 381, 16 L. Ed. 488, and the other cases cited from the Supreme Court by the claimant in that connection, namely Railway Co. v. Howard, 7 Wall. 392, 19 L. Ed. 117; Green Bay, etc., R. R. Co. v. Union, etc., Co., 107 U. S. 98, 2 Sup. Ct. 221, 27 L. Ed. 413; Jacksonville, etc., Ry. v. Hooper, 160 U. S. 514, 16 Sup. Ct. 379, 40 L. Ed. 515, and the case of Marbury v. Kentucky Land Co., 62 Fed. 335, 10 C. C. A. 393, in all of which, either expressly or by reasonable implication, authority was given by charter or statute to do the things objected to. Nor is it to be likened to the case of American National Bank v. National Wall Paper Co., 77 Fed. 85, 23 C. C. A. 33, in which there had been a purchase by a corporation at an execution sale in its favor, and what was complained of had been done by it to enable it to realize on the purchase.

This case seems to me, as I have intimated, more analogous to Davis v. Old Colony Railroad, supra, than to any of those cited by the claimant. In that case the defendant contracted to guarantee the payment of the expenses of holding "a world's peace jubilee and international musical festival" in the city of Boston. The ground of the guaranty was the increase in the number of passengers and in the amount of business that would result to the railroad from the jubilee and festival. In this case the Gilchrist Company guaranteed the lease on account of the advantages that it was believed would result to it from having the Butler Company located in the leased premises. It can make no difference, it seems to me, that the corporation in this case is a private business corporation, and in that case was a public service corporation. The question in this case, as it was in that, is whether the guaranty was within the powers granted to the corporation. In First Nat. Bank v. Towner, 239 Fed. 433, 152 C. C. A. 311 (C. C. A. 6th), on facts somewhat similar to those in this case, it was held that one corporation had no power to guarantee the debts of the other. The leading federal cases are referred to.

[3] Corporations constitute a large part of the business agencies of the country and differ greatly from each other in their powers. The charters and agreements of association under which they are organized and the laws relating to them should be fairly and reasonably construed. There is, it seems to me, no reason why they should be "liberally" construed, if by that is meant something beyond the reasonable intendment of the language used. Under all circumstances they should be justly construed, with due regard in each case to the purpose for which the corporation was created. Ordinarily charters and agreements of association are drawn by interested parties, who may be trusted to look out for themselves, and there is no reason why rules of construction should be modified in their favor. And persons

who deal with a corporation are bound to take notice of its charter powers.

The result is that the Gilchrist Company had no authority to enter into the guaranty, that there is nothing to prevent it from setting up the defense of ultra vires, and that the claim should be disallowed.

This renders it unnecessary to consider the other defenses, though I may remark that, except as stated, I am not particularly impressed by them, and agree in the main with the learned referee.

[4] The Butler Company was in default at the time when the petition in this case was filed by the Filene Company and the liability of the Gilchrist Company, if there was any, had, I think, become absolute.

Butler was no doubt deeply interested in getting the guaranty of the Gilchrist Company, and there is certainly ground for argument that there was a misuse of the Gilchrist Company's credit for his own private advantage. But it is unnecessary to decide this question.

[5] In regard to the questions relating to the execution of the guaranty, I am inclined to the opinion that if it was not executed as it should have been, and if the Filene Company, through its counsel, was chargeable with notice, nevertheless the continued acquiescence of the directors in the guaranty, with knowledge of the circumstances attending its execution, and their failure to object to it, warrant a finding that it should be regarded, if intra vires, as the act of the company.

The order of the referee is vacated, and an order may be entered disallowing the claim.