# Farmers' and Traders' Bank v. Thixton, Millett & Company.

(Decided May 4, 1923.)

## Appeal from Daviess Circuit Court.

1. Husband and Wife—Facts Held to Show Wife was Only Surety on Husband's Note.—Proof that a note given by a husband and wife jointly was given for the balance due on the purchase price of a saloon for which the husband had traded his pool room, and which he himself operated, shows that the wife received no part of the consideration of the note, and was a mere surety, who was not bound on her suretyship.

2. Corporations—Generally Cannot do Act not Expressly Permitted by Charter or Following by Necessary Imputation.—As a general rule, a corporation can do nothing which is not expressly granted to it by its charter or which does not follow as a necessary incident thereto.

3. Corporations—Cannot Become Accommodation Indorser Unless Expressly Authorized.—It is ultra vires for an ordinary trading corporation to become an accommodation indorser on the note of another, unless expressly authorized by its charter.

4. Corporations—Authority to do Any Act Usually Done by Person in Like Business Held not to Authorize Accommodation Indorsement.—A corporation authorized by its charter to operate a distillery was not authorized to become an accommodation indorser on a note of a saloon keeper by a provision in its charter giving it authority to do any act usually done by persons engaged in like business.

W. T. ELLIS for appellant.

R. W. SLACK for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

Some time in July or August, 1913, P. D. O'Bryan and wife, Julia A. O'Brien, executed a note for $2,375.00 to Thixton, Millet & Company payable at the Farmers' and Traders' Bank in the city of Owensboro. Immediately upon its execution it was indorsed and delivered to appellant, Farmers' and Traders' Bank. Becoming due it was renewed and from time to time reduced until it amounted to only $1,750.00 on January 21, 1915, at which time it was renewed for the last time. Being unpaid the Farmers' and Traders' Bank instituted this action in the Daviess circuit court against Julia A. O'Bryan, P. D. O'Bryan and Thixton, Millett & Company to recover on the note.

Mrs. O'Bryan by separate answer pleaded that at the time of the making of the original note and at the time of each renewal she was a married woman, the wife of her co-defendant, P. D. O'Bryan, and that the loan was obtained by P. D. O'Bryan and the money received by him and appropriated to his sole and separate use; that there was no consideration for her signature; that she was merely a surety for her husband and was not therefore bound by the obligation.

The other defendants, Thixton, Millett & Company, a corporation, pleaded that it was merely an accommodation indorser for P. D. O'Bryan; that it did not receive any consideration for signing and indorsing the note; that these facts were known to plaintiff bank at the time and before it accepted the original note and at all times since; that its attempt to become an accommodation indorser for O'Bryan was *ultra vires;* that its charter did not warrant or allow it to become surety or accommodation indorser for another and that it was therefore not bound on the note. The provisions of its charter with reference to the business in which it was authorized to engage and the things it may do as an entity are fully set forth in section 3 of its charter, which reads:

"3. The nature of the business to be transacted, promoted and carried on by the corporation is the manufacture and sale of whiskey and brandy, acquiring, owning and operating distilleries for the manufacture of whiskey and brandy, the business of wholesale and retail liquor dealers and jobbers in whiskey, brandy, wines and other spirituous and vinous liquors. The corporation shall have the power to acquire and own and sell all and any real estate which may be needful or convenient in carrying on or promoting its business, and it shall have the corporate power to do any other thing which is usually done by persons engaged in the like business."

After issue joined the parties by agreement submitted the law and facts to the trial judge, whereupon it was ordered and adjudged that the plaintiff's petition as to the defendant Thixton, Millett & Company be dismissed; that the plaintiffs recover of P. D. O'Bryan the sum of $1,750.00 with interest from April 1, 1915, and that the petition as to Mrs. Julia A. O'Bryan be dismissed. From the evidence the trial court made the following finding of fact:

"The court finds as a fact that Thixton, Millett & Co., received no consideration for its indorsement of the note

sued on, or any note for which it was a renewal, that these facts were known to the plaintiff at the time of the execution of the original note and indorsement of same by the defendant Thixton, Millett & Company and at the time of each renewal thereafter, including the note sued on.

"The court further finds that at least one of the directors and some of the stockholders had knowledge or information as to the execution of the note sued on or some of its antecedents; that the articles of incorporation do not authorize the defendant Thixton, Millett & Co. to become sureties or indorsers merely for accommodation."

Upon that finding of fact, the court stated the law as follows:

"The action of the defendant Thixton, Millett & Co. in indorsing the note for accommodation was *ultra vires* and under the terms of its articles of incorporation there is no liability thereon.

"The court further finds as a matter of law that there is nothing in the record to sustain the plaintiff's plea of estoppel."

The evidence conduces to prove that the cashier of appellant bank called up O'Bryan, who was then in the pool room business in Owensboro and who had theretofore operated a saloon in that town and informed O'Bryan that he, the cashier, knew of a saloon which O'Bryan could buy at a great bargain and which he advised O'Bryan to buy. Upon O'Bryan informing the cashier that he did not think it an opportune time to buy the saloon and further that he did not have any cash which he could put in the business, he was given to understand by the cashier that he would be provided with the necessary funds, if security was afforded. The cashier saw and talked with O'Bryan and then had O'Bryan and the owner of the saloon to meet at his bank and there to discuss the sale and purchase of the saloon. O'Bryan was to trade his pool room for the saloon and pay the difference in money. To meet this difference it was necessary for him to borrow $2,375.00 from the bank. The cashier told O'Bryan that he would have to give surety on his note and suggested to him that he get Thixton, Millett & Company to indorse for him, and assured O'Bryan that the corporation of Thixton, Millett & Company would make such indorsement. O'Bryan did not see or talk to any

person connected with Thixton, Millett & Company, but later called up the company and talked to one of its members and asked if it would indorse for him, and received information that it would as a company. At the instance of the banker the note was made by O'Bryan and wife to Thixton, Millett & Co. and indorsed by that firm to the bank; whereupon the bank placed the proceeds of the $2,375.00 not to the credit of O'Bryan, who gave a check·for the amount to the owner of the saloon in payment of the difference between the saloon and the pool room. From these facts it certainly appears that Mrs. O'Bryan received no part of the consideration of the note and that she was a mere surety. Being a married woman she was not bound on her suretyship. Hart v. Bank of Russellville, 127 Ky. 424; Daviess County Bank & Trust Co. v. Wright, etc., 129 Ky. 21; Magoffin v. The Boyle National Bank of Danville, 24 Law Rep. 585; Baker v. Owensboro Savings Bank & Trust Company, Receiver, 140 Ky. 121.

It likewise appears from the foregoing evidence that Thixton, Millett & Co. were accommodation indorsers; that it received no part of the consideration for which the note was executed, and these facts were all well known to appellant bank.

The only question remaining is, may a trading corporation, such as Thixton, Millett & Co., organized for definite and specific purposes, with its powers specifically set forth in its charter, become an accommodation indorser for another without consideration? It is insisted by appellant bank that it can, and especially that a corporation with a charter provision as broad as that of Thixton, Millett & Co. can do so. This argument is based upon the latter part of the 3rd clause of the articles of incorporation copied above, which reads:

"To acquire, own and sell all real estate necessary or convenient in carrying on or promoting its business, and to do any other thing usually done by persons engaged in like business."

It is earnestly insisted that inasmuch as the corporation had power "to do any other thing usually done by persons engaged in like business" it could, like an individual, become an accommodation indorser, and did become bound when it indorsed the paper which is the subject of this suit. This contention is in the face of the general rule that a corporation can do nothing which is not expressly granted to it by its charter, or which

does not follow as a necessary incident thereto. One of the recent leading texts on the subject thus states the rule:

"The proposition is well supported by authorities that it is *ultra vires* of a corporation to enter into contracts of guaranty or suretyship not in furtherance of its business, unless given express authority to do so. The fact that the corporation may reap some indirect benefit from becoming a surety or guarantor for another does not confer upon it implied power to do so; and two corporations, though each may incidentally be benefited, have no implied power to borrow a sum of money to be divided between them and each become the surety for the other for the amount of money received by such other. A provision in articles of incorporation that the corporation shall have power to make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals, is limited by that part of the articles which defines the business the corporation may engage in, and does not confer on the corporation, by implication, the power to guarantee dividends on the stock of another corporation." 7 R. C. L., pp. 603, 604.

The rule stated by Thompson in his commentaries on the Law of Corporations, vol. 4, section 5721, is:

"With the exception of those corporations—such as trust and guaranty companies—which are organized for the express purpose of becoming sureties for other persons or corporations, and with other exceptions elsewhere stated, it may be laid down, as a general rule, that no corporation has the power, by any form of contract or indorsement, to become a guarantor or surety for, or otherwise lend its credit to another person or corporation." And in section 5723, in assigning the reasons and limitations, he says: "This principle is designed for the preservation of the funds of the corporation, for the benefit of those having an interest in them, by preventing them from being embarked in enterprises not authorized by the charter or governing statute. Those persons are primarily the stockholders as long as the corporation continues a going concern, and it is their right that the corporate funds shall not be put to hazards or embarked in an undertaking not authorized by the contract of association. If the doctrine that the capital of the corporation is a trust fund, for the security of its creditors, is any more than an empty and idle collection of words,

then the principle is also designed for the security of the creditors of the corporation, by preserving from an unauthorized dissipation a fund which, in the event of insolvency, equity impresses with a trust in their favor."

We do not think that the words employed in the charter and which we have copied above can by any stretch of reasonable construction be held to invest the corporation, Thixton, Millett & Co., with power to become surety or accommodation indorser.

This exact question was discussed by this court in the case of Monarch & Co. v. Farmers & Traders Bank, 105 Ky. 436, where the doctrine was laid down in this way:

"As a general rule, a corporation has no power to enter into a contract or suretyship or guaranty, or otherwise lend its credit to another, unless such contract is reasonably necessary, or is usual in the conduct of its business. Ordinarily, the simple act of becoming surety or guarantor for the contract or debt of another person or corporation is not within the implied powers of a corporation. The reason for this rule is that such a contract risks the capital and funds of the corporation in an enterprise not contemplated by the stockholders in subscribing for or purchasing its stock, prejudices the rights of its creditors, and exceeds the authority conferred by its charter. See 7 Am. & Eng. Enc. Law (2nd Ed.) 778. The reason for this rule was well expressed in Todd v. Kentucky Union Land Co., 57 Fed. 51, where it is said: 'First, the corporate funds belong to its shareholders, and, by the very terms of the law creating it, can not be devoted to any other purpose than those indicated by its charter. Such obligations would violate the fundamental terms of the agreement between the corporators themselves. Second, to do so would be to exercise a power not conferred by the state, either expressly or impliedly. The state's grant of the corporate franchise is for the purposes prescribed, and the execution of such obligations would be beyond the power conferred, and therefore a diversion of the corporate purposes as well as of the corporate funds.' "

To the same effect are the cases of the Chemical National Bank v. Wagoner, 93 Ky. 525; Federal National Bank v. Cross Creek Coal Company, 68 Atlantic Reporter, 1018; Park Bank v. German-American Surety Co., 22 N. E. 567.

We are of opinion that the finding of both fact and law made by the lower court is fully sustained by the record; and the judgment for the reasons above stated is affirmed.

Judgment affirmed.