# DECISIONS

## OF THE

# Court of Appeals of Kentucky

### Harding v. Kentucky River Hardwood Company.

### Buskirk v. Hargis Commercial Bank & Trust Company.

(Decided June 10, 1924. Rehearing Granted with Modification, October 14, 1924.)

### Appeals from Fayette Circuit Court.

1. Attorney and Client—Power of Attorney and Letter Held Not to Empower Attorney to Sell and Assign Note.—Power of attorney to execute bond for costs "and do other acts necessary," and letter permitting discount at 10 per cent., held not to empower attorney to sell and assign note given him for collection at a discount of more than 18 per cent.

2. Principal and Agent—Powers Strictly Construed and Limited to Particular Acts Authorized.—Powers of attorney are to be strictly construed in conformity to controlling purpose, and those delegating authority to perform specific acts and also containing general words are limited to particular acts authorized.

3. Principal and Agent—Person Dealing with Agent Must Ascertain Authority.—A person dealing with an agent must ascertain extent of agent's authority.

4. Attorney and Client—Bank Discounting Note in Hands of Attorney for Collection Deals with Him at its Peril.—Bank purchasing note from attorney holding it for collection was under necessity of ascertaining attorney's authority to sell note, and sale of note without authority or at a greater discount than authorized conveyed no title, in view of Kentucky Stats., section 3720b-19.

5. Pleading—One Liable on Note Held Entitled to File Cross-Petition Against One Purchasing Note from Unauthorized Agent and Subsequently Receiving Payment.—Where partnership executed note, and one partner sold out to other, who assumed indebted-

ness, and corporation was formed by remaining partner and as-
sumed indebtedness and attorney without authority assigned
note at a discount to a bank which collected from corporation,
in action by payee on note against partner selling out, latter has
right to cross-petition against bank to prevent circuity of action
as against contention that no privity existed.

6.  Bankruptcy—Bank Discounting Note should be Party to Action
on it.—Where note was discounted with bank and was charged
back to account of payee, but not assigned by the bank, it should
have been made party in action by payee's trustees in bank-
ruptcy on note.

7.  Appeal and Error—Defect in Parties Raised too Late on Appeal.
—Where plaintiff was real party in interest and a bank which
should have been made a party concurred in suit, all its officers
testifying therein, it is too late on appeal to maintain that plain-
tiff had no right to maintain action and that bank should have
been made a party.

8.  Appeal and Error—Too Late on Appeal to Maintain Defendant
could Not Cross-Petition.—It is too late on appeal to claim that
a defendant was without right to maintain cross-action.

ALLEN & DUNCAN for appellant Harding.

JOHNSTON & YANCEY for appellant Buskirk.

J. PELHAM JOHNSTON for appellee Kentucky River Hardwood
Company.

O'REAR, FOWLER & WALLACE for appellee Hargis Commer-
cial Bank & Trust Company.

OPINION OF THE COURT BY JUDGE McCANDLESS—Re-
versing on original and cross appeal.

The Kentucky River Hardwood Company, together
with U. B. Buskirk and S. M. Croft, of Breathitt county,
Kentucky, on the 30th of June, 1912, executed and deliv-
ered to the Raleigh Iron Works Company, of Raleigh, N.
C., a note for $1,500.00 with interest, due and payable
December 30, 1913. The note was given as a deferred
payment on thirty logging cars upon which a lien was re-
tained to secure its payment. At that time Buskirk and
Croft were partners, doing business under the firm name
of Kentucky River Hardwood Company.

On June 2, 1913, Buskirk sold his interest in the bus-
iness to Croft, who assumed full payment of this note.
Thereupon Croft organized a corporation under the same
firm name and transferred all of the firm property to it
and it likewise assumed the payment of the note.

The iron company discounted the note to the Com-
mercial Bank of Raleigh, N. C. It was not paid at ma-

turity and on the 2nd of February, 1914, the bank charged it to the account of the iron company and so notified the latter, and with the iron company's consent delivered it to S. Brown Shepherd, an attorney of that city, for collection, with the understanding that if collected the proceeds would be credited to the iron company's account.

Shepherd forwarded the note to O. H. Pollard, president of the Eastern Kentucky Collecting Agency of Jackson, Ky., for collection. This firm was composed of O. H. Pollard, president, and W. N. Cope, secretary, both of whom were attorneys practicing law in that city. It was receipted in the name of the company by W. N. Cope, secretary.

Apparently the collecting agency was dissolved shortly thereafter, at any rate subsequent negotiations were carried on between Shepherd and Cope. The note not having been paid, Cope filed suit thereon and wrote Shepherd for a power of attorney to execute cost bond, and this was sent him. There was delay in getting service and on the 2nd of September Cope wrote that the lumber business was in bad condition, that he believed they would eventually collect the note, but he had learned that defendants owed subcontractors quite a lot, and in addition had other commercial paper out; that he was able to discount the note at 10% and advised doing so, and requested Shepherd to see his clients and wire him if they thought the discount advisable. This was followed on the 5th of September by a very gloomy letter, in which he expressed the opinion that there would be an effort in the next thirty days to force the defendant into bankruptcy, and if this should be done the claim would not be worth over half; that he had been talking to parties who owed the defendant some money and figured he could discount the note to them, and he strongly advised a discount of as much as 20% rather than delay, and urged immediate action, saying, "Do not under any circumstances let this matter go over longer than the 10th inst."

With full authority from his clients Shepherd wired Cope on the 7th of September, "Will accept 10% discount, principal and interest, if you can do no better and do not think you are sure of collecting from Buskirk on the note. Wire results."

On the same date he wrote: "I have just wired you, 'Accept 10% discount if you can do no better.' My client had the idea that Buskirk was able to make this note good as he signed the note and was unwilling to take any dis-

count if you thought you could get it from him. I know you will do the best you can.''

On September 10th Cope wired Shepherd, ''No chance to discount at 10%. Will proceed to prosecute to judgment. See letter.'' It does not appear that any letter was ever sent, but on that day Cope sold and by his written endorsement assigned the note to the Hargis Commercial National Bank for the sum of $1,275.00, which amount was placed to his (Cope's) credit, on the books of the bank. In addition to his endorsement upon the note, Cope also executed a written contract setting out the terms of the transaction and agreeing that the suit should be prosecuted in the plaintiff's name for the benefit of the Hargis Bank.

On the 13th of September a man claiming to be S. Brown Shepherd appeared at Jackson and registered at a local hotel. He was visited by Cope and stayed in the town for two or three days. On the 14th he and Cope went to the bank, where Cope introduced him as Mr. S. Brown Shepherd, and he represented himself to be that individual and that he had come to Kentucky for the purpose of settling the matter.

After some conversation Cope drew a check for $1,144.00, payable to S. Brown Shepherd, and this party endorsed that name thereon and also endorsed the discounted note and Hargis paid him the amount of the check, and shortly thereafter he left.

We have no further trace of him, but there is no doubt he was an impostor, as it is conclusively shown that the real S. Brown Shepherd was in Raleigh at the time, and not in Kentucky during that year.

It appears that Cope theretofore had collected $135.00 interest from the payors and credited same on the note, and in the written agreement executed by him and Hargis at the time of the discount it was stipulated that the note and interest amounted to $1,700.00; that the balance after deducting this credit was $1,565.00, and as Hargis paid $1,275.00 the discount would be $290.00, or about 18.5%.

Subsequent to the negotiation the Kentucky River Hardwood Company renewed the note in question with other paper it owed the bank, and it appears that same has since been paid.

Neither Shepherd nor the Iron Company heard from Cope after the receipt of his wire of September 7, and later they wrote him in reference to it and also wrote Mr.

Pollard. Cope claimed that he had settled the matter with Shepherd and some fruitless correspondence ensued. Later the Raleigh Iron Works Company was adjudged a bankrupt. In those proceedings William H. Harding and Cary K. Durfrey were trustees in bankruptcy and by regular sales and transfers William H. Harding became the owner of all the property and claims formerly owned by that corporation.

This suit was filed by Harding and Durfrey as such trustees against Buskirk and Croft, seeking to recover the amount of the note with interest. After Harding became the owner of the assets an amended petition was filed in his name setting up that fact. Croft does not appear to have been summoned, but Buskirk filed answer pleading payment to Hargis as the holder in possession of the note, as a full and final settlement of the note in question. He also made his answer a cross-petition against the Hargis Commercial National Bank and prayed that in the event a judgment was entered against him that he might recover over against the bank. The bank filed an answer to the petition and cross-petition. It traverses the material averments of the former pleadings and asserts authority in Cope to assign that note and the validity of the various transactions between it and Cope and the so-called S. Brown Shepherd, and relied on the latter being the real S. Brown Shepherd; that it was a *bona fide* purchaser for value and denies the right of any recovery either on the petition or cross-petition. The lower court dismissed the petition and cross-petition and Harding appeals. Buskirk has also taken a separate appeal, both of which are considered and heard together.

The issues raised may be summarized thus: (a) What was the extent of Cope's authority? (b) If not authorized to discount the note what was the effect of his act in so doing?

It is conceded that where a claim is placed in the hands of an attorney for collection, his power is restricted to proceedings directed to that end and that he cannot compromise, discount or sell it to another person without being specifically authorized so to do; but it is urged that such power was given by the power of attorney to execute cost bond. The part of this relied upon reads:

"That the Commercial Bank of Raleigh, N. C., does hereby appoint W. N. Cope, attorney, of Jackson, Kentucky, as its attorney to act for it in all respects in its behalf in a suit against the Kentucky

River Hardwood Company and other, with full power to sign in its name a bond for costs and do other acts necessary."

The agument is, that as attorney, Cope already had authority to take all steps necessary in the prosecution of the lawsuit and that the expression "do other acts necessary" signifies an intention to give him a free rein in the matter and unlimited authority in handling the note, including its negotiation and discount; that this was a general authority and that the letter and message of September 7 recognized this and only fixed the sale price. It is further contended that if the power of attorney is eliminated, a power to sell generally is authorized by the letter and message.

We cannot agree to either proposition. Considering first the power of attorney, it will be observed that all of its parts clearly refer to steps to be taken in the prosecution of the suit and there is no intimation of a sale of the note being in contemplation.

It is the general rule that such instruments are to be strictly construed in conformity with the controlling purpose in view and that "powers of attorney delegating authority to perform specific acts and also containing general words are limited to the particular acts authorized." U. S. Fidelity and Guaranty Co. v. McGinnis, 147 Ky. 781; Gouldie v. Metcalf (Tex.), 16 A. S. R. 912; Frost v. Erath Cattle Co. (Tex.), 26 A. S. R. 831.

"Formal instruments conferring power are, as will be seen, ordinarily subject to a strict construction. Words used will be presumed to have their ordinary meaning, and the authority itself will be confined to the plain import of the language, and will not be extended by mere construction to embrace that which is not fairly included within the terms of the instrument." Mecham on Agency, second edition, section 779.

In White v. Young, 122 Ga. 830, an agent was given power to institute suit to recover land and sought to defend a similar action in regard to the same land, but the court held the instrument could not be so construed, saying:

"This was a formal power of attorney, apparently deliberately executed, attested and recorded. It will therefore be strictly construed and in view of

the controlling purpose; and the addition of general words will not be construed to extend the authority so as to add new and distinct powers different from those expressly delegated."

In U. S. Fidelity and Guaranty Co. v. McGinnis, 147 Ky. 781, the question was as to the authority of an agent to sign the name of principal as surety on an official bond. The courts aid:

"It is the law that a formal instrument conferring authority will be strictly construed and can be held to include only those powers which are plainly given, and those which are necessary, essential and proper to carry out those expressly given. It will be presumed that a principal in conferring the power intended to confer with it the right to do those things without which the object contemplated could not be accomplished, but beyond this the authority will not be extended by construction. Meacham on Agency, section 308; Harris v. Johnson (Minn.), 40 A. S. R. 312; Gouldy v. Metcalf (Tex.), 16 A. S. R. 912; Gilbert v. How (Minn.), 22 A. S. R. 724; Frost v. Erath Cattle Co. (Tex.), 26 A. S. R. 831. See also Mexican National Coal, Timber and Iron Co. v. Frank, 154 Fed. 217; Henry v. Lane, 128 Fed. 250; Porges v. U. S. Mortgage Co., 203 N. Y. 181; Meacham on Agency, sections 780 and 784."

As above pointed out, the specific act authorized to be performed was to sign the bank's name to the cost bond, and under all of the authorities quoted the power is limited to that act, notwithstanding the general words contained therein.

The same principle controls the construction of the letter and telegram. Appellees argue that by these papers a general authority was given to discount the note and that a violation of his instructions on the part of the agent in increasing the discount would not render his action invalid, at least that the Raleigh bank could not, after giving such authority, raise the question with the Hargis bank, as the latter would not be bound by the former's secret instructions to its agent.

The fallacy of this argument lies in the fact that the two papers are practically identical and in each the power to discount is made to depend upon a fixed price, so that a person could not ascertain the agent's authority without

at the same time discovering the condition upon which it was based; hence, this does not fall within the line of cases holding that the authority of a recognized agent is determined by the nature of his business, and that the apparent scope of his employment cannot be narrowed by undisclosed instructions; because here the limitation is disclosed by the same instrument that is relied upon as creating the agency; hence, we must conclude that neither the power of attorney nor the letter or telegram authorized Cope to discount the note in question for more than 10%.

It is equally well settled that a person dealing with an agent must ascertain the extent of the agent's authority. Whenever one man presents himself as the agent of another it is the duty of all who may have transactions with him in his representative character to inquire into the extent of his authority and they must deal with him at their peril.'' Venada's Heirs v. Hopkins, Admr., 1 J. J. Marshall 285.

"Parties dealing with an agent known by them to be acting only under an express grant, whether the authority conferred be general or special are bound to take notice of the extent of the authority conferred. They must be regarded as dealing with the grant before them and are bound at their peril to notice the limitations thereto prescribed either by its own terms or by construction of law.'' Meacham on Agency, second edition, section 707.

"The holder of the paper purchases it at his peril in reference to the authority to make it. *Caveat emptor* applies to him in full force in reference to the authority to make the paper. For instance, if the person making the paper professes to act as agent of another; the person purchasing it must look out for the agent's authority to make the paper; the purchaser purchases at his peril as to the authority of the agent. The same rule applies to an agent of a corporation issuing paper in the name of the corporation; the purchaser of the paper buys it at his peril as to the agent's authority to issue it.'' Chemical National Bank of N. Y. v. Wagner, 93 Ky. 525.

Under the above principles the Hargis bank was under the necessity of ascertaining Cope's authority. If its officials examined the papers to which reference is made they must have discovered the limitations pointed

out. If they did not so investigate they are chargeable with the same notice and dealt with him at their peril.

Subsection 19 of section 3720b, Kentucky Statutes, in reference to negotiable instruments provides: "The signature of any party may be made by an agent duly authorized in writing."

In Inter-Southern Life Insurance Co. v. First National Bank of Hazard, 178 Ky. 95, the court holds that unless this is done, "the act of the agent is unauthorized and void."

In any view of the case the sale and assignment of the note in question by Cope to the Hargis bank was unauthorized, and the bank thereby acquired no title to the note; that transaction was not ratified in any manner by plaintiff, or any of his assignors, and neither of them is concerned therein, hence plaintiff's rights and remedies are not affected thereby, and he is entitled to collect from the payors on the note the full amount thereof, subject to the credit of $135.00 interest paid to Cope by the makers and credited thereon.

In reference to the cross-petition it is claimed by the Hargis bank that there is no privity between it and Buskirk; that Buskirk may have a cause of action as against Croft and the Kentucky River Hardwood Company, but not as against it; that the Kentucky River Hardwood Company paid the obligation by reason of the fact that the note was secured by property owned by it and not by reason of any assumption of the debt due by Buskirk and Croft. However, it must be admitted that while Buskirk and Croft were primarily liable, the Hardwood Company had obligated itself to Croft to pay the amount of the note and thereby became liable therefor independent of the lien on the property; that this liability was for the benefit of Buskirk as well as Croft, and that it endeavored to discharge that liability by paying the note to its holder, Hargis. As the note has not been paid to Harding, Buskirk upon payment of this could recover it from the Hardwood Company. Unquestionably the Hardwood Company has a right to demand a refund from Hargis, so that to avoid a circuity of action it seems eminently proper for Buskirk to recover from Hargis the balance of the note which Buskirk is required to pay to plaintiffs and which Hargis has without right collected from the Hardwood Company.

Some question is made as to the right of plaintiffs to maintain this action. It is true that the note has been

assigned by the Commercial Bank of Raleigh, but all of the proceedings show that it was charged back to the account of the iron company by that bank and that this suit was brought by the trustees in bankruptcy with full concurrence of the bank officers who have all testified, and it seems that Harding is the real party in interest. The Raleigh bank should have been made a party in the case. However, no question was raised in the lower court as to the right of plaintiffs to maintain the original action, nor as to the right of Buskirk to maintain the cross-action and those questions come too late in this court.

We conclude that the plaintiff is entitled to recover from Buskirk the amount of the note with interest from the 3rd day of December, 1913, until paid, and that Buskirk may recover the same amount from the Hargis bank.

No questions are decided except those discussed herein.

Wherefore, judgment in each case is reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.