## Standard Sanitary Manufacturing Company v. Stump, et al.

(Decided December 18, 1925.)

### Appeal from Pike Circuit Court.

1. Principal and Agent—Traveling Salesman Not Authorized to Make Joint Contract to Supply and Install Plumbing Material.— Traveling salesman for plumbing supply company had no implied authority to join with local plumber in making contract with purchaser that salesman's principal would supply plumbing materials and local plumber would install them, where purchasers knew that he was only a traveling salesman.

2. Principal and Agent—In Absence of Express Authority to Contrary Traveling Salesman's Authority is Limited to Soliciting Orders and Transmitting them to Principal.—In absence of express authority to contrary, traveling salesman's authority is limited to soliciting orders and transmitting them to principal for approval, and he has no implied authority to bind principal by absolute sale or contract.

3. Principal and Agent—Filling Order Given to Traveling Salesman Held Not Ratification by his Principal of Contract Containing Terms of which Principal was Ignorant.—Where traveling salesman's employer accepted and filled order given to traveling salesman for plumbing supplies, in ignorance of salesman's contract as to delivery and installation of supplies, it did not ratify such contract.

4. Contracts—Party Suing on Express Contract could Not Rely on Implied Contract.—One suing on express contract could not rely on implied contract.

HARMON, FRANCIS & HOBSON for appellant.

O. A. STUMP for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellees, O. A. Stump, I. M. Williams and Fannie R. Williams, are the owners of a lot in Pikeville, Kentucky, on which in the spring of 1922 they were erecting a hotel. They do not seem to have had any architect to supervise this building, nor do they seem to have had

any plans and specifications for the same, at least so far as the plumbing work was concerned. They had reached the point in the erection of the building where the "roughing in" part of the plumbing work became necessary. At this stage, the appellees did not even know what material they would need or what it would cost. They got in touch with W. B. Call, a local plumber, and also with the Belknap Hardware & Manufacturing Company, a wholesale house of Louisville, Kentucky. They were figuring with Call on the installation of the plumbing work, but it was necessary for them to procure the material from some other source as Call had no such stock on hand either in quantity or kind as called for by this job. A representative of the Belknap Company went to Pikeville and there figured with appellees and Call on what plumbing should go into the building and what material would be needed. The building was then at a standstill for want of the "roughing in" of the plumbing work, and it was imperative that quick delivery of the material be made in order that the construction work might go forward. The Belknap man could not promise an immediate delivery of the needed material, and negotiations between him and the appellees seem to have been suspended, although the record is not quite clear as to just what was the status between them. Shortly thereafter, the appellee Stump learned from Call that the latter usually purchased his supplies from the appellant, Standard Sanitary Manufacturing Company, and so he wrote a letter, which he had Call to sign, to this company, addressed to its place of business in Huntington, W. Va., asking it to send a salesman to Pikeville. In response to this letter, appellant did send a salesman to Pikeville. At the request of the appellees, this salesman and Call figured for some three or four days on what the building needed, after which they made up a list of the material required with the prices of the various items thereof. After this list was completed, the salesman copied it on the usual order blanks of the appellant and then, together with Call, went into a conference with the appellees concerning it. Up to this point there is no controversy about the facts, but from here on the parties differ as to what took place. The appellees claim that in this conference, when it appeared that the cost of the materials as figured by the salesman came to $10,975.15, they inquired what the cost of installation would be and that Call then stated he would do this work for $2,550.00.

At appellee's request the salesman then placed on the copy of the order which they later retained, under the total figure for the materials, this item: "Labor $2,550.00," and then totaled the two as $13,525.15. The appellees retired to consider the figures. After some consideration, they proposed to give Call and the appellant the job if they would jointly agree to do a "turnkey" job for $13,000.00. Upon this, Call and the salesman conferred together and then so agreed to do a "turnkey" job for that amount. It was further agreed that the material included in the order should be shipped within a week's time. On the other hand, appellant insists that no such agreement as appellees claim was made. Call and the salesman testify that when appellees requested that the cost of the labor and material be reduced to $13,000.00 the salesman replied that he had no authority to make any reduction in the price of the material, but Call then spoke up and agreed to do the installation for $500.00 less than he had at first offered and so as to make the total job cost the appellees $13,000.00. They both emphatically state that there was no joint agreement on the part of the appellant and Call to furnish and install the material, but that the agreement to furnish the material by appellant was separate and distinct from the agreement to install it by Call. They further testify that nothing was said or agreed about the time when the material was to be shipped or delivered. Thereafter the salesman sent the order for the material in to the office of appellant, but nothing appeared on this copy about the labor, installation or date of shipment. The manager of appellant's branch at Huntington accepted the order as received by him and shipped the material in entire ignorance of any of appellees' claims about a "turnkey" job or date of shipment. It is satisfactorily shown in the evidence that the material was not all delivered until the latter part of August or the early part of September, and that the appellees could not go ahead with their building until they had received such material. They then brought this suit against the appellant and Call, in which they averred that Call and the appellant had jointly agreed and contracted to furnish the material and install the plumbing system in appellees' hotel; that appellant and Call had jointly agreed to deliver the material not later than the 9th day of May, 1923; that they and each of them had failed to deliver this material until the 25th of August, 1923, and that by reason of this delay appellees had

been damaged in the sum of $2,999.00. There also was a claim set up in an amended petition for faulty installation, but this claim was later dismissed at the trial. After a demurrer to the petition had been overruled, appellant answered traversing the appellees' petition and affirmatively pleading that the appellees had placed this order with appellant through a traveling salesman, who was without authority to make any such contract as appellees claimed. The answer of Call was simply a traverse. By agreement the affirmative allegations in the answer of the appellant were traversed of record and the case went to trial on the issues as thus raised. The jury returned a verdict against appellant in the sum of $1,600.00, and from the judgment entered on that verdict this appeal is prosecuted.

Both at the close of the appellees' case and at the close of the whole case the appellant made a motion for a peremptory instruction, which the court overruled. In this we think the court erred. The appellees knew at the time they were negotiating with appellant's salesman that the appellant was engaged in the business of selling plumbing material and fixtures. The appellees also knew that they were dealing with the appellant through a traveling salesman. It is well established law that in the absence of express authority to the contrary a traveling salesman's authority is limited to the soliciting of orders and transmitting them to his principal and that he has no implied authority to bind his principal by an absolute sale or contract. The authorities from this court supporting this principle are collected in the case of Nolin Milling Co. v. White Grocery Co., 168 Ky. 417, 182 S. W. 191. In this case, quoting from the earlier case of John Matthews Apparatus Co. v. Renz & Henry, 22 Ky. Law Rep. 1528, 61 S. W. 9, we said:

"We consider that the main and only necessary question for us to determine is whether the transaction in question was a contract, or merely an offer or order, which either party was at liberty to decline before final acceptance. The indisputable facts are that Russell, the traveling salesman of appellant, was a 'drummer,' a term that has come to have a fixed and proper place in our language, as well as in our law; that this transaction was the usual taking of an order by the drummer, and transmitting it to his 'house' for action, approval or rejection. The cus-

tom of so doing business is of such long standing, so extensive and so important in the commercial world, especially in the United States, that the courts will take notice of it. They have done so, and this court has. In Charles Brown Grocery Co. v. Becket, 22 Ky. Law Rep. 394, 57 S. W. 458, we recognized in this state what appears to be the general rule in most or all of the states, quoting it in this language: 'In the absence of special authority to bind his principal, the drummer can merely solicit and transmit the order, and the contract of sale does not become completed until the order is accepted by his principal.' Any other construction of these transactions would tend to so materially hamper and cripple this important means of conducting mercantile business as to well-nigh destroy its effectiveness now so generally understood, employed, and recognized.''

It is clear, therefore, that even if appellees' version of what took place be correct, the salesman of appellant was without authority to make any contract, and especially so extraordinary a one as embarking his principal, engaged solely in the business of selling plumbing material and fixtures, in a joint enterprise with a third party which not only embraced the furnishing of the required material but also its installation. Cf. Lucile Mining Co. v. Fairbanks, Morse & Co., 27 Ky. Law Rep. 1100, 87 S. W. 1121; Second National Bank of Richmond, Indiana v. Adams, 93 S. W. 671, and J. M. Case Mfg. Co. v. Vickers, 147 Ky. 396, 144 S. W. 76. As was well said in the Second National Bank of Richmond, Ind., case *supra*, where the act of the agent is not within his implied power, those who deal with such agent are bound at their peril to know the extent of his authority. So appellees in this case were bound at their peril to know the extent of the authority of appellant's salesman, and since he had no authority, express or implied, to make the contract appellees say he made, they have no claim under it against appellant.

Appellees urge, however, that as appellant filled the order its salesman sent in, it ratified the contract he made with them. The evidence overwhelmingly shows that appellant accepted and filled appellees' order in entire ignorance of the agreement about delivery and installation which appellees say was a part of the order. In 2

C. J. 495, the rule applicable to this state of facts is thus stated:

"The mere fact that the principal has received or enjoyed the benefits of the unauthorized act will not amount to a ratification if he did so in ignorance of the facts. Thus the acceptance of profits or the use of lands or goods will not amount to a ratification of the agent's acts, if done in ignorance of the circumstances connected with such acts, unless the principal intentionally accepts the benefits without inquiry, or perhaps after years of acquiesence; nor will the retention of the benefits of one transaction constitute a ratification of another separate and distinct transaction between the agent and the same third party of which the principal had no knowledge. A principal also has a right to receive money from an agent in payment of a debt due from the latter without inquiry as to the source from which it came, and if it is in good faith so received and applied by the principal, its subsequent retention after he learns that it was procured through an unauthorized transaction entered into by the agent in his name will not amount to a ratification of such transaction."

The case of Gaskill v. Huffaker, 20 Ky. Law. Rep. 1555, 49 S. W. 770, is in entire accord with this text. In this case, we said:

"It is insisted, however, for appellants, that, though the bank's indorsement of the notes was without authority, appellees accepted and kept the money and so have ratified its act. This precise question was made in the case of Claflin v. Wilson (51 Iowa 15, 50 N. W. 578), above referred to. The court there said: 'Defendant insists that plaintiff ratified the sale and transfer of the note by receiving and retaining the money paid him by the banker. But the money was received in ignorance of the claim of purchase by Davis. He was authorized to regard the transaction as a payment, and he received the money in satisfaction of the note. The fact that plaintiff retained the money cannot be regarded as a ratification of the sale, for the reason that he could not have been restored to the condition he was in before payment of the note, because of the decree in favor of Davis, and his at-

tempt to enforce it by sale of the lands.' The appellees here, having simply indorsed these notes for collection, had a right to presume that the bank had done its duty, and collected them. Having no notice to the contrary of this, they had a right to accept the money; and, when they learned of appellants' claim, Southard was insolvent, and it was too late for them to protect themselves.''

See also Short v. Metz Co., 165 Ky. 319, 176 S. W. 1144.

It therefore results that appellees' claim of ratification is without support either in law or in fact.

Appellees next contend that even if appellant was not bound by the agreement its salesman made, having accepted the order, it was bound to fill it within a reasonable time and that they were entitled to have this issue submitted to the jury. Appellees, however, brought this suit on the express contract they say appellant's salesman made with them. This being so, they must be held to the averments of their pleading and cannot rely on an implied contract. Fowler v. Thomson, 193 Ky. 593, 236 S. W. 1047.

As appellees failed to prove a binding contract between them and appellant and Call, as alleged in their petition, the lower court should have peremptorily instructed the jury to find for appellant. As it failed so to do, its judgment is reversed, with instructions to grant appellant a new trial in conformity to this opinion.

Judgment reversed.