## Melton Electric Company v. Central Credit Corporation.

(Decided May 23, 1930.)

470

PENTECOST & DORSEY for appellants.

HENSON & TAYLOR for appellee.

Opinion of the Court by Judge Rees—Affirming.

The appellee, Central Credit Corporation of St. Louis, Mo., brought this action against the Melton Electric Company, a partnership composed of M. C. Melton and E. B. W. Melton, to recover on three trade acceptances for $231 each, executed by appellants to the Southern Distributing Company on August 16, 1926, and due respectively in 60, 90, and 120 days after date. In its petition the plaintiff alleged that the trade acceptances were assigned to it by the Southern Distributing Company, on August 21, 1926, and that it was a holder in due course. By agreement of the parties the case was tried by the court without the intervention of a jury. Judgment was rendered for the plaintiff, and the defendants have appealed.

On August 16, 1926, M. W. Johnson, who was doing business in St. Louis under the name of Southern Distributing Company, sold to appellants territorial rights for the sale and distribution of certain patented electrical appliances known as the "Wonder Line." Under the terms of the contract of agency, appellants were required to buy six electric dish washing machines, and the Southern Distributing Company was to send three salesmen to the allotted territory to assist appellants in disposing of them. If the machines were not sold within 60 days, they were to be taken back by the Southern Distributing Company. On August 21, 1926, the trade acceptances were delivered to appellee by Miss L. L. King, who was a stenographer in Johnson's office. Each of the trade acceptances was indorsed as follows: "Southern Distributing Company—L. L. King." The appellee paid to the Southern Distributing Company the sum of $559.60. The articles sold to appellants were never delivered, and Johnson had disappeared before this suit was instituted.

By their answer appellants admitted the execution of the trade acceptances, but denied that they had been assigned to the appellee, and denied that the appellee was a holder in due course. The fourth paragraph of the answer alleges that Johnson was a peddler and had pretended to sell to appellants patent rights and had failed to indorse the trade acceptances "peddler's notes," as required by section 4223 of the Kentucky Statutes. The demurrer to the fourth paragraph of the answer was properly sustained, since one vending a patent right is not required to take out a license as a peddler, and a note given for patent rights is not void in the hands of a purchaser for value, because the words "peddler's note" are not written across its face. National Bank of the Republic v. Current, 142 Ky. 353, 134 S. W. 479. If the trade acceptances were executed for the six electric dish washing machines which were to be shipped from another state, it was an interstate transaction, and the statute relied on does not apply. Security Finance Co. v. Collins, 224 Ky. 134, 5 S. W. (2d) 886.

The chief ground for reversal argued in appellant's brief is that the power of attorney under which L. L. King indorsed the trade acceptances was not sufficient for that purpose. The power of attorney was executed on July 19, 1926, by the Southern Distributing Company by M. W. Johnson and reads in part:

"Know all men by these presents that M. W. Johnson, doing business as the Southern Distributing Company of the city of St. Louis . . . do make, constitute and appoint L. L. King true and lawful attorney for me and in my name, my place and stead, to transact all ordinary bank business to draw and endorse checks, promissory notes, drafts, and trade acceptances, for collection or deposit, and to waive demand notice and notice of protest of all such writings."

It is argued that under section 3720b-31, Kentucky Statutes, which provides that the indorsement must be written upon the instrument or upon a paper attached thereto, and under section 3720b-19, which provides that "the signature of any party may be made by an agent duly authorized in writing," the power of attorney to L. L. King was not broad enough to authorize the sale and discount of the trade acceptances in question to the

appellee and a number of authorities are cited to the effect that powers of attorney must receive a strict interpretation. It is insisted that, if the power of attorney is construed in accordance with the rule announced in the cited cases, the agent, L. L. King, only had authority to indorse the trade acceptances to a bank for collection or deposit. The rule contended for by appellants is usually applied to formal powers of attorney deliberately executed, and such instruments are held to include only those powers which are plainly given. Harding v. Kentucky River Hardwood Co., 205 Ky. 1, 265 S. W. 429; Hackworth v. Hastings Industrial Co., 146 Ky. 387, 142 S. W. 681. But whether or not the power of attorney in this case, when construed in the light of the above rule, fell short of authorizing the agent to discount the trade acceptances to appellee, we need not determine, since the power of attorney when it was delivered to appellee was accompanied by a letter signed by M. W. Johnson, which reads as follows:

"Central Credit Corporation, 3401 Jefferson Ave., St. Louis, Mo.

"Att'n Mr. Probst.

"Dear Sir: This will serve to introduce Miss King, who has my Power of Attorney, as explained to you, and who during my absence will sign and endorse for this company any or all trade acceptances presented to you.

"Thanking you for any courtesies shown Miss King, I remain

"Yours very truly,
"Southern Distributing Company,
"By M. W. Johnson."

This letter must be read in connection with the power of attorney and, when read together, they clearly authorized L. L. King to indorse the trade acceptances in the manner and under the circumstances that she did. Furthermore, even had the agent, King, acted without authority and in a manner so as not to bind her principal, M. W. Johnson, yet by his conduct he ratified the act of Miss King. The appellee, when the trade acceptances were indorsed to it, executed its check for $559.60 payable to the Southern Distributing Company which Johnson accepted. There is no proof, and appellants do not

claim, that appellee is not a bona fide holder of the trade acceptances for value if the agent had authority to assign them.

Having concluded that the agent did have authority to assign the trade acceptances, it follows that the judgment must be, and it is, affirmed.