## Flynn's Executor v. Mullett.

(Decided Feb. 27, 1934.)

W. J. GOODWIN for appellant.
ROBERT LEE PAGE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Lillie Mae Mullett brought this suit against the Fidelity & Columbia Trust Company, executor of Margaret Flynn, deceased, to recover for services rendered the deceased. From a verdict and judgment in her favor for $2,750, the executor appeals.

The amended and substituted petition, in so far as material, reads as follows:

"Plaintiff states that on or about August 27th, 1929, decedent was an inmate of a Catholic institution in the City of Louisville, but left said institution and came to her home and resided with her until the time of decedent's death.

"She says that at the time decedent came to reside with her, decedent was an invalid suffering from an incurable disease; that at said time, decedent's mind was impaired but that she did have lucid intervals. Plaintiff says that because of the physical and mental condition of decedent, she was required to render extraordinary menial services in caring for, nursing, boarding and attending to said Margaret Flynn. That during such lucid intervals when decedent's mind was unimpaired, decedent promised and agreed to pay this plaintiff reasonable compensation for the services rendered. That plaintiff relied upon said promise and agreement to be paid for the board, care, nursing and attention to decedent; that decedent promised to make adequate provision in her will for payment to this plaintiff for the services as herein stated. That decedent required constant nursing, both day and night, and required of plaintiff the rendering of menial services of the most extraordinary kind and character.

"Plaintiff states that the defendant, Fidelity & Columbia Trust Company, was at the time decedent came to reside with plaintiff, acting as agent for

decedent, and that it paid for and on behalf of decedent to this plaintiff, a sum of $40.00 per month from August 27th, 1929, until March, 1931, for decedent's board, lodging and such incidental services as were necessary to be rendered to a person of decedent's age; that thereafter, from March, 1931, until the time of decedent's death, the defendant, acting as agent for decedent, paid to plaintiff the sum of $75.00 per month for decedent's board, lodging, and such services as were reasonably necessary to be rendered to a person of decedent's age.

"Plaintiff says that the services rendered by her to decedent were not such as would be reasonably expected of a niece in boarding, looking after and caring for an aunt, but were such as she is reasonably entitled to be paid for. Plaintiff says that her services in nursing, and rendering extraordinary menial services to decedent were reasonably worth $50.00 per week during the time decedent was cared for by this plaintiff, or a sum of $6,850.00. That she made demand upon defendant as executor of the estate of decedent for the payment of such sum, but that her demand was refused."

After its demurrer and motions to elect, make more specific, and strike had been overruled, the executor filed an answer denying the material allegations of the petition, and pleading in substance that the $40 a month and $75 a month were paid plaintiff, and were in full for all services rendered by her.

The first question presented is the propriety of the court's action in overruling the demurrer and the various motions.

Appellant insists that upon plea of an express contract there can be no recovery on an implied contract. Appellee denies this proposition and relies upon the case of Ruehl v. Davidson's Ex'r, 237 Ky. 53, 34 S. W. (2d) 937, wherein the court said:

"Under the authority of Benge's Adm'r v. Fouts, 163 Ky. 796, 174 S. W. 510; Dean's Executor v. Griffin, 217 Ky. 603, 290 S. W. 483, Kellum v. Browning, 231 Ky. 308, 21 S. W. (2d) 459, and other opinions of this court, there may be a recovery on the basis of quantum meruit upon an al-

leged express contract, or there may be a recovery on an implied contract although the petition may allege an express contract.''

In stating the rule announced in the quoted cases, the language used is entirely too broad. All that those cases hold is that one may sue on both an express and implied contract, and recover on either in the absence of a motion to elect. It is true that, where there is an express contract to pay for services, and the contract is silent as to their value, the claimant may recover the reasonable value of the services performed. Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S. W. (2d) 999. However, it is not true that a recovery may be had on an implied contract when only an express contract is pleaded. On the contrary, we have ruled uniformly that a recovery upon proof of an implied contract cannot be had when only an express contract is declared on. McGavock v. McGavock, 246 Ky. 579, 55 S. W. (2d) 400; Standard Sanitary Mfg. Co. v. Stump, 212 Ky. 253, 278 S. W. 583; Bates v. Starkey, 212 Ky. 347, 279 S. W. 348; Fowler v. Thomson, 193 Ky. 593, 236 S. W. 1047; Smith v. Robinson, 185 Ky. 76, 214 S. W. 771; Newton's Ex'r v. Field, 98 Ky. 186, 32 S. W. 623, 17 Ky. Law Rep. 769. In the last-mentioned case it was held that under a complaint alleging that defendant's testatrix agreed to make compensation in her will for the services rendered to her by plaintiff, plaintiff could not recover upon an implied contract.

If the amended and substituted petition be regarded as pleading only an express contract, then there was an entire failure of proof. All that we have is some vague and indefinite statements made by Miss Flynn, whose mind was impaired, that ''she intended to do the right thing by Lillie Mae''; that ''Lillie Mae would not be sorry for anything she would do for her''; and that she was going to leave her what she had. These statements fall far short of showing an express contract, and were not sufficient to take the case to the jury. If the amended and substituted petition be construed as pleading only an implied contract, the allegations that Mrs. Mullett performed extraordinary and menial services, without specifying the particular services performed, was a mere conclusion of law and the demurrer should have been sustained. Allen v. Smith, 208 Ky. 207, 270 S. W. 782. On the other hand, if the amended and substituted petition be construed as pleading both an express and

implied contract, then we think the demurrer and other motions made by appellee were sufficient to require an election.

But, even if it be conceded that the amended and substituted petition was sufficient to authorize a recovery on an implied contract, manifestly the law will not imply a contract to pay for services, even though they be of an extraordinary and menial character, if, as a matter of fact, there was an express contract between appellee and Miss Flynn's agent covering such services. It is conceded that appellant was unable to attend to her own business, and that the Fidelity & Columbia Trust Company was acting as her agent, and that appellee and the agent made a contract under the following circumstances. Miss Flynn was living at the Sacred Heart Home, and was paying that institution for all services rendered her the sum of $40 a month. After living there a while, Miss Flynn expressed a desire to go to the home of her niece, Lillie Mae Mullett, and did go to her home in August, 1929. Thereafter the $40 a month which had been paid to the Sacred Heart Home was paid to Mrs. Mullett until March, 1931, when the amount was increased to $75 a month. As to the terms of the agreement, Mr. Arthur E. Gohmann, who attended to the matter on behalf of the trust company, testified, in substance, as follows: Mrs. Mullett agreed to take care of Miss Flynn for $40 a month. In March, 1931, Mrs. Mullett came to his office and made a request for more money on account of additional care which Miss Flynn required. She stated at the time that her services were worth $75, and that amount would enable her to take care of the extra help she needed. It was understood that the $75 a month was covering everything, with the exception of some extras, such as doctors' bills, druggist bills, clothing, bed sheets, etc., which the trust company agreed to pay and did pay. On the other hand, Mrs. Mullett testified as follows:

"When my aunt first came home with me Mr. Gohmann came to my house. We were living on Lexington Road, and my aunt was sick in bed that night when he came out, and he made the arrangements, $40.00 a month, and after that my aunt wanted to see him all the time, and he came to the house on Lexington Road on a Sunday, and he made the arrangements of $75.00. He went in to see my aunt, and he came to the kitchen and told me he

realized my health was not like it was, and he was raising it to $75.00, which I could get a girl to come and do the house work, and I could still take care of my aunt.

"54. What was that compensation for? A. For room and board, that is what I understood it was for.

"55. Well, was that the understanding of what that compensation was for? A. That is what I thought it was for."

On cross-examination Mrs. Mullett's evidence is as follows:

"110. Do you remember when you gave your deposition in this case? When you testified under oath as you are now testifying? A. Yes, sir.

"111. I will ask you if on page five, questions 33 and 34—if these questions were asked you and you made these answers:—let me go back—page 4, question 32: 'Yes, Mrs. Flynn, Mr. Gohmann and yourself made arrangements about keeping Mrs. Flynn during 1931? Yes, sir. [33] What was that agreement? $75.00 per month. [34] Why was the increase? Well she had gotten worse. She was sick. [Question 35] Needed more attention? She did, lots more.'—Did you say that? A. She needed a lot of care.

"112. Well, did you say the reason you were getting more was because she was needing more attention? A. Mr. Gohmann came out and he suggested that she would pay $75, and I could get a girl to come and do the house work.

"113. I will ask you if this question was not asked you and you made this answer, page five, question 43: 'Well why were you paid $75.00 per month? Well, because she was more care, I suppose.' Did you say that? A. I suppose I did. She was a lot more care from the time I had her on."

The amended and substituted petition admits that the $40 a month and $75 a month were for "decedent's board, lodging and such services as were reasonably necessary to be rendered to a person of decedent's age." The parties were not contracting merely on behalf of a person of decedent's age. They were contracting on

behalf of an invalid who needed nursing as well as room and board and who preferred to leave the hospital and receive these services at the home of Mrs. Mullett. The arrangement was made to pay Mrs. Mullett the same sum that was being paid the hospital. Mrs. Mullett admits that she nursed and looked after Miss Flynn from the very first, and that for several months she did not apply for additional compensation. Miss Flynn gradually grew worse, and required more attention. Mrs. Mullett admits that she was paid $75 a month because she was more care. She further admits that Mr. Gohmann told her he realized her health was not like it was, and that he was raising it to $75 in order that she might get a girl to come and do the housework, and "I could still take care of my aunt." Looking at the case in the light of the circumstances under which Miss Flynn was taken to the home of Mrs. Mullett, and in the light of Mrs. Mullett's own conduct and admissions, fortified by the positive evidence of Mr. Gohmann, we think it conclusively appears that the $40 and $75 a month were intended by the parties to be in full of all services rendered by Mrs. Mullett, and that her statement that she understood or thought the compensation was for room and board, was not sufficient to make an issue for the jury.

It follows that appellant's motion for a peremptory instruction should have been sustained.

Judgment reversed and cause remanded for a new trial not inconsistent with this opinion.