# Ritter v. Kentucky-Tennessee Light & Power Co. et al.

May 6, 1941.

44

Marshall Funk for appellant.

Rodes and Willock for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appellant, Mrs. Mary G. Ritter, sued the appellees, Kentucky-Tennessee Light & Power Company, Associated Gas & Electric Securities Company, and the General Utilities Security Company, to recover $925 for breach of contract to accept surrender of a certain security sold her and refund the money she had paid for it. The trial court directed a verdict for the defendants and dismissed the petition. Plaintiff appeals.

The plaintiff established that around Bowling Green in October, 1929, W. T. Hines, Ed Schreck, M. D. Hawkes and N. L. Pickard were engaged in selling securities of companies going to make up what is called the "Associated Gas & Electric System." The principal company whose securities were being sold seems to have been the Associated Gas & Electric Company, one of the public utility companies composing the system. The Kentucky-Tennessee Light & Power Company was an operating subsidiary, with its chief office at Bowling Green. Plaintiff's husband testified unequivocally that during the urgent solicitations by all the salesmen they represented to him and his wife that the securities they desired to sell her were absolutely sound and the company would guarantee the same. Further, that if she should become dissatisfied with her investment at any time she could surrender the securities and get her money back on thirty days' notice. The "guarantee" was good for "ten years or more." In reliance upon these representations his wife, through him as agent, purchased what is denominated as a "6% Convertible Debenture Certificate, Series B, of 1929," of the

Associated Gas & Electric Company, which was an obligation to pay $1,000 with 6% interest, coupled with the privilege of conversion or change into other securities. However, the order or application to buy the security, signed by Mrs. Ritter, applied for a "6% Debenture A." This application was addressed to the Kentucky-Tennessee Light & Power Company, and Mrs. Ritter's check for $1,000 was payable to that company. No terms or conditions appear on this order except that it was subject to acceptance and provided for partial payments, neither of which has any bearing on the decision for, though the application was accepted, a different instrument was sold and delivered and the purchase price was paid in full. The check bears a stamped endorsement, "Pay to the order of Associated Gas & Electric Company. Kentucky-Tennessee Light & Power Company." It was deposited to the credit of the Associated Company.

Interest on the certificates was paid until January, 1933. It seems that Mrs. Ritter wanted to surrender the same and recover her money then, but Hawkes reassured her husband that the investment was safe and that it was not necessary for him to see a lawyer about the matter. This was repeated several times as payment of interest would be in default. In 1934, at the instance of Hawkes, the certificate was exchanged for a new one of similar character upon the assurance of its soundness and representation of the "money back" guarantee. Interest on it was paid for awhile and then scrip certificates were issued in lieu of cash. Finally that method of paying was abandoned and the investment became worth only $75. Frequent tender of the certificate and demands for fulfillment of the agreement to refund the money were rejected.

At the time of this transaction, and previously, the Kentucky-Tennessee Light & Power Company held a dealer's license to sell securities issued by the State Department of Securities. That company's application for such a license stated,

"It is proposed to advertise and sell, through agents, Associated Gas & Electric Company's securities which have been registered to employees, customers and the public generally in Kentucky."

Cards were issued by the Department of Securities to

several men, including the above-named salesmen, as representatives of that Company as a licensed dealer. It ceased to be licensed in February, 1930, and on the 20th of that month a license was issued to the Associated Gas & Electric Securities Company for the same purposes stated in the application of the other company. This Securities Company appears not to have been incorporated until December 31, 1929. Roland Fitch, General Manager of the Kentucky-Tennessee Light & Power Company in charge of its physical property and operations until 1936, testified that there was a campaign to sell securities of the Associated System through employees of affiliated and subsidiary companies for which the employees were paid a commission. The "System" was not a corporation but apparently the name by which the group of affiliated corporations was called. The practice of selling stock and securities in those companies ran over a period of years beginning in 1924 or 1925. Hawkes was in charge of that department. The witness testified that the salesmen had been instructed to assure customers they could get their money back whenever they wanted it. There was other evidence to the same effect. Hawkes testified that while he was now employed by the Kentucky-Tennessee Company, he had been formerly employed by the Associated System from 1926 to 1937 and sold its securities; that he sold securities of various utility companies going to make up the system which embraced the Associated Gas & Electric Company and the Kentucky-Tennessee Light & Power Company; that there was never any promise to refund the money and accept the return of the securities; and that he never authorized Schreck or Hines or Pickard to make such promises; that Schreck was employed by the Kentucky-Tennessee Company and Hines by the Securities Department of the System; and that all of those salesmen helped the Kentucky-Tennessee Company to sell stock and securities. Henry D. Fitch, at one time president of the Kentucky-Tennessee Company, related that Hawkes was not employed by it. All of the salesmen of the System securities had offices in connection with the Kentucky-Tennessee Company in Bowling Green.

Without deciding the contested point, we shall regard the contract to re-purchase the security involved upon the terms and conditions claimed by the plaintiff as being valid and its breach as affording a cause of

action. See Thomson v. Coleman, 219 Ky. 524, 293 S. W. 1089; 7 R. C. L. 210; 14 C. J. 687; 18 C. J. S., Corporations, sec. 405.

The evidence supporting plaintiff's case only proves that the employees of the Kentucky-Tennessee Light and Power Company sold the certificates of indebtedness of its parent or holding company, viz., the Associated Gas & Electric Company. The intermediate or collateral company, seemingly a money-raising affiliate, called the Associated Gas & Electric Securities Company, entered the picture after the certificate was sold Mrs. Ritter.

Although it appears that they were working under Hawkes, who was not employed directly by the Kentucky-Tennessee Company, let it be assumed as established that the employees of that company in its undertaking to act as a dealer sold the security to plaintiff with the inducements and promises charged. The company was the agent of a disclosed principal; but according to the record it was only a conduit through which the principal operated for it received no profit or benefit. It accepted plaintiff's application to buy a security and her check. It endorsed the check to the principal to whose credit it was deposited in New York, and the principal sent the instrument direct to the purchaser. For their services the employees were paid commissions by the principal.

The record does not contain the articles of incorporation of the Kentucky-Tennessee Light & Power Company. An issue was raised in the pleadings as to its corporate power to act as a dealer of securities of another company. . It was not alleged that it had the power to guarantee the securities sold. There was no proof. It cannot be assumed that the corporation had any such power or power to contract to accept the surrender of same and pay back the purchase price. This subject is fully considered in Greene v. Middlesborough Town & Lands Company, 121 Ky. 355, 89 S. W. 228, 229, 28 Ky. Law Rep. 303, 11 Ann. Cas. 888. See also M. V. Monarch Company v. Farmers' & Traders' Bank, 105 Ky. 430, 49 S. W. 317, 20 Ky. Law Rep. 1351, 88 Am. St. Rep. 310.

There is evidence that the officers of the Kentucky-Tennessee Company knew that such inducements and promises were being made by its employees, but the record does not show that the board of directors of the

company ever authorized any officer or employee or any one else to guarantee the value of the securities or bind it to redeem the same. This omission, however, would not relieve the corporation of liability if its agents or employees acted within the apparent scope of their authority. But apparent authority is "limited and governed by the character of business in which the corporation is engaged." Caddy Oil Company v. Sommer, 186 Ky. 843, 218 S. W. 288, 290. The only evidence we have as to the character of its business is that it was and is a manufacturer and distributor of electricity.

It is a rule of general acceptation and application that persons dealing with an agent of a corporation are chargeable with knowledge of the nature and extent of their authority. Caddy Oil Company v. Sommer, supra; Harding v. Kentucky River Hardwood Company, 205 Ky. 1, 265 S. W. 429; Fordson Coal Company v. Wells, 245 Ky. 291, 53 S. W. (2d) 564. It is also well established that one asserting and relying on the act of an agent must establish his authority or prove such facts as will form the basis of a reasonable inference of authority. Kentucky-Pennsylvania Oil & Gas Corp. v. Clark, 247 Ky. 438, 57 S. W. (2d) 65; General Service Garage v. Lexington Oil Company, 274 Ky. 330, 118 S. W. (2d) 690. The agreement to guarantee the value of the certificate of indebtedness of another corporation and to re-purchase it at any time in the future the purchaser might become dissatisfied with it was so unusual and extraordinary a transaction for an employee of a manufacturer and distributor of electricity to engage in, and so foreign to any reasonable implication or appearance of authority, it cannot be held that such commitments were within the rule of apparent or ostensible authority by which a principal is legally bound. Standard Sanitary Manufacturing Company v. Stump, 212 Ky. 253, 278 S. W. 583; Peaslee-Gaulbert Company v. Rogers, 220 Ky. 338, 295 S. W. 137, 55 A. L. R. 377; Chevrolet Motor Company v. Pieper's Trustee, 280 Ky. 276, 132 S. W. (2d) 926. It is sufficient to rest the opinion that the trial court properly instructed the jury to find a verdict for the defendant Kentucky-Tennessee Light & Power Company upon the ground that plaintiff failed to establish any authority to bind that company in those who sold the security.

As stated, the defendant Associated Gas & Electric

Securities Company was not incorporated and, of course, had nothing to do with the transaction excepting it participated in the exchange of securities. We do not think the evidence sufficient to hold it responsible for the breach of contract. The proof of merger and assumption of liabilities as alleged against the defendant General Utility Securities Company was likewise insufficient.

The judgment is affirmed.