**SPERTI PRODUCTS, INC., Appellant,**

v.

**CONTAINER CORPORATION OF AMERICA, Appellee.**

Court of Appeals of Kentucky.

May 12, 1972.

William J. Walsh, Lindhorst & Dreidame, Cincinnati, Ohio, Donald L. Johnson, Kaufman, Jolly, Johnson & Blau, Newport, for appellant.

James G. Osborne, O'Hara, Ruberg & Cetrulo, Covington, for appellee.

STEINFELD, Chief Justice.

Appellee Container Corporation of America sued appellant Sperti Products, Inc., to recover a debt which it claimed Sperti Products, Inc. had guaranteed. The indebtedness arose by reason of extension of credit by Container Corporation of America to Juice Corporation. Hereinafter we shall refer to these corporations respectively as Container, Sperti and Juice. Judgment in favor of Container in the amount of

$20,917.88 with interest was entered against Sperti, from which it appeals.[1] We affirm.

On January 25, 1961, the Board of Directors of Sperti adopted a resolution which continued in effect at all times herein mentioned, to-wit:

"RESOLVED, that the officers of the Corporation be and they hereby are authorized from time to time and to the extent that it may by them be determined advisable and necessary to guarantee performance and payments of agreements and obligations of the Corporation's subsidiaries which may from time to time be entered into by such subsidiaries in the ordinary course of business."

E. L. Dittrich was president of Sperti from 1955 or 1956 until about April 15, 1967. During his years as president he was its chief executive officer, and during at least a part of his tenure as president he was also treasurer of Juice, a wholly-owned subsidiary of Sperti. Juice had been buying from Container but its credit had become suspect, therefore in August 1965 Container sought a guarantee before it would continue to extend credit to Juice. As president of Sperti, Dittrich executed the guaranty on its behalf obligating Sperti to pay to Container such debt as Juice might incur to it. Among other things, it stated "This is a continuing guaranty, and shall be revocable only as to transactions entered into by you (Container) subsequent to receipt by you (Container) of notice of termination sent by the undersigned (Sperti) * * *." Notice of termination was never sent.

Sperti contends that "There was no valid and binding guaranty agreement because it was beyond the scope of the authority of the President to bind the Appellant (Sperti) by such a guaranty agreement." The trial court referred the case to a Master Commissioner to hear witnesses and make recommendations. He found that on Oc-

tober 1, 1965, an agreement for the sale of all of the capital stock of Juice was entered into by Sperti, however, he stated "The paper is dated October 1, 1965, and appears to be signed on that date, but * * * there is the provision, 'the purchase and sale * * * shall take place at * * * Jersey City, New Jersey * * * on October 21, 1965.'" He also reported that Sperti was liable to Container. His report was confirmed by the court after exceptions to it were considered.

The accuracy of the date of execution of the sale agreement is seriously questioned, particularly because the proof shows that on October 18, 1965, a special meeting of the Board of Directors of Sperti was held at which the directors authorized the sale of stock of Juice. The evidence indicates that the agreement to sell the stock was executed either on October 1, 1965, or at the latest on October 18, 1965. That agreement provided that the effective date of the sale was retroactive to August 31, 1965. The sale was completed at a meeting at the office of the Corporation Trust Company in Jersey City, New Jersey, on October 21, 1965.

There is also a question as to when the guaranty was signed. Dittrich stated that at the time he signed it Juice was no longer a subsidiary of Sperti, but that before signing he obtained telephone approval from all of Sperti's directors. The credit manager of Container testified that his corporation did not receive the guaranty until October 21, 1965. The commissioner reported that on September 15, 1965, Dittrich "executed and signed" the guaranty, but he also said that the jurat of the notary public on the guaranty gives the date of execution as October 20, 1965. The commissioner concluded that "At the time of the execution thereof (the guaranty) Juice was a wholly owned subsidiary of Sperti." Sperti contends that "The sales agreement was signed before the guaranty was signed,

---

1. One claim was reserved by the trial court, but under the authority of CR 54.02 the judgment was made final.

and the sales agreement was to have 'deemed to have taken place as of August 31, 1965,' so that the 1961 resolution could not be in effect to this guaranty to Appellee on October 20, 1965, and, as a consequence, Dittrich did not have the authority to guarantee any of Juice's new obligations after October 18, 1965, the date the sales agreement was signed."

Evidence revealed that Sperti had a vital interest in Juice even after the sale was consummated. The stock was not fully paid for at the time of sale, wherefore, the sales agreement provided protection for Sperti to insure the payment of the balance due over a period of years. This arrangement included a pledge of the capital stock being sold. The proof also indicated that in order for Juice to continue its activities under its new ownership help from Sperti was essential. A loan of $400,000 from Sperti to Juice was provided for and it became a guarantor of several different accounts on behalf of Juice.

Another issue is whether the guaranty continued to protect Container after Juice was no longer a subsidiary of Sperti. There is no evidence indicating that Container knew until long after the debt of Juice to Container was incurred of the restriction in the authorizing resolution which limited the officers of Sperti to guarantee debts only for subsidiary corporations. To support Sperti's arguments that Dittrich exceeded his authority in obligating his company for debts created after Juice was no longer Sperti's subsidiary and that Container was obligated to ascertain his authority, it cites Ritter v. Kentucky-Tennessee Light & Power Company, 287 Ky. 43, 151 S.W.2d 435 (1941). It relies on the principle that the law requires a person dealing with an agent of a corporation to use diligence to ascertain the authority of the agent and that such person is presumed to know the extent of the agent's authority. It claims that Container was derelict in not fully informing itself on this subject. Container answers by pointing out that Ritter also held "It is also well established that one asserting and relying on the act of an agent must establish his authority or prove such facts as will form the basis of a reasonable inference of authority." It argues that the facts proved "a reasonable inference of authority."

It was Dittrich who executed, on behalf of Sperti, the agreement of sale and a 1966 amendment thereto. This amendment acknowledged that the buyers of the stock have tried to obtain the "release of Sperti from all existing guarantees by Sperti of obligations of Juice * * * and that such efforts have been unsuccessful. Sperti agreed to continue as a guarantor on each such existing guarantee * * * etc." The President's authority to execute these instruments seems conceded.

We conclude from the series of authorized transactions and the 1961 resolution, as did the trial court, that the guaranty to Container was not an unauthorized act. We concede that the evidence did not clearly establish that the guaranty was signed on September 15, 1965, the date fixed by the commissioner; however, there was sufficient proof to show that it was executed before Juice ceased to be a subsidiary of Sperti. Not finding that the holding of the trial court that the guaranty was executed at a time when Juice was a wholly-owned subsidiary of Sperti was clearly erroneous (CR 52.01), we accept the conclusion that it was executed under authority specifically conferred. However, if it was not signed within that time, Dittrich's act was " * * * of the nature that (came) within the apparent scope of his employment." Har-Bel Coal Co. v. Asher Coal Mining Company, Ky., 414 S.W.2d 128 (1967). Sperti is bound. 19 C.J.S. Corporations § 994, p. 456; 3 C.J.S. Agency § 231, p. 138.

The judgment is affirmed.

All concur.